# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3802

_____

Domingo Eugenio Lopez-Gabriel,     *
                         *
        Petitioner,           *
                         *   Petition for Review of an Order
     v.                    *   of the Board of Immigration
                         *   Appeals.
Eric H. Holder, Jr., Attorney     *
General of the United States,      *
                         *
       Respondent.        *

_____

Submitted: June 14, 2011
Filed: September 2, 2011

_____

Before COLLOTON, CLEVENGER,[1] and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Domingo Eugenio Lopez-Gabriel, a native and citizen of Guatemala, petitions for review of a decision of the Board of Immigration Appeals ("BIA") dismissing his appeal from an Immigration Judge's ("IJ") order removing him from the United States. Lopez-Gabriel asserts that evidence of his alienage was obtained in violation of his rights under the Fourth and Fifth Amendments. He contends that the evidence

_____

[1]The Honorable Raymond C. Clevenger III, United States Circuit Judge for the Federal Circuit, sitting by designation.

should have been suppressed or, at a minimum, he should have been afforded an evidentiary hearing on his motion to suppress evidence. We deny the petition.

I.

On January 15, 2008, police officer Brett Wiltrout of Worthington, Minnesota, arrested Lopez-Gabriel for "No Minnesota's Driver's License (No Proper Identification)" after a traffic stop. At the police station, agents from the United States Immigration and Customs Enforcement ("ICE") questioned Lopez-Gabriel. On January 17, 2008, ICE agents transferred Lopez-Gabriel to the ICE office in Sioux Falls, South Dakota, and questioned him further. Based on evidence obtained from the interrogations, the Department of Homeland Security ("DHS") commenced removal proceedings against Lopez-Gabriel pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). The DHS asserted that Lopez-Gabriel is a native and citizen of Guatemala, and that he was subject to removal because he was an alien present in the United States without being admitted or paroled.

Lopez-Gabriel moved to suppress all evidence that was obtained "as a result of [the] illegal stop, seizure, and interrogation" of him by Officer Wiltrout, and all evidence obtained from the "coercive, in-custody interrogations" of him between January 15 and 17, 2008. He also moved for an evidentiary hearing, for discovery, and to terminate his removal proceedings.

In support of his motions, Lopez-Gabriel submitted an affidavit that set forth his version of events. He asserted that on January 15, 2008, a police officer saw him at an intersection and pulled him over, even though he "had done nothing wrong." The officer, who was wearing a police uniform and had a handgun strapped to his belt, did not tell Lopez-Gabriel that he had the right to remain silent. Lopez-Gabriel averred that he did not feel free to leave, because the officer had signaled him with flashing lights to stop.

At the police station, officers told Lopez-Gabriel that he was getting a citation or ticket. The officers took money from Lopez-Gabriel "to pay for costs," but would not allow him to pay the ticket. ICE agents questioned Lopez-Gabriel at the jail, but did not inform him that he had the right to remain silent. According to Lopez-Gabriel, he felt that he had to answer the agents' questions because he was in jail.

After transferring Lopez-Gabriel to the ICE office in Sioux Falls, ICE agents questioned him without advising that he could remain silent. Because Lopez-Gabriel was under arrest and at the ICE office with several armed ICE agents, he felt that he must answer their questions. In conclusion, Lopez-Gabriel stated:

> I feel that the police stopped me because I look Latino. I believe that if I were not Latino, the police would have let me pay the ticket and go home, or they would have just given me the ticket to pay later and let me go home. I do not believe that the police treated me the same way they treat white people who are in the same situation.

The DHS opposed Lopez-Gabriel's motion and submitted the police report of Officer Wiltrout. In the report, Wiltrout said that he stopped Lopez-Gabriel because Lopez-Gabriel's vehicle had a "heavily cracked" windshield. Wiltrout asked Lopez-Gabriel for a driver's license. Lopez-Gabriel stated that he did not have a license and gave the officer a Guatemalan identification card, which was "peeling" and "difficult to read." Wiltrout learned through police radio communications that Lopez-Gabriel previously had received a citation for "No Minnesota Driver's License" from the Worthington Police Department. Because Lopez-Gabriel could not prove the authenticity of his identification card, Officer Wiltrout arrested Lopez-Gabriel for "No Minnesota Driver's License (No Proper Identification)" and took him to the Nobles County jail. According to Wiltrout, authorities gave Lopez-Gabriel a ticket and the option to post bond, provide proper identification, or appear before a judge.

The IJ denied Lopez-Gabriel's motions on February 10, 2009, ruling that he had not presented a *prima facie* case of a Fourth or Fifth Amendment violation. On March 19, 2009, the IJ ordered Lopez-Gabriel removed from the United States. Lopez-Gabriel appealed this final decision to the BIA. The BIA affirmed and dismissed Lopez-Gabriel's appeal. The BIA determined there was nothing in the record to support Lopez-Gabriel's assumption that Officer Wiltrout stopped Lopez-Gabriel based on his race, and that he thus failed to show an egregious constitutional violation. The BIA also concluded that the actions of the ICE agents, as described by Lopez-Gabriel in his affidavit, did not support a claim of improper conduct, so there was no reason to call the agents to testify. Because the DHS met its burden of proving alienage, and Lopez-Gabriel failed to provide evidence of his legal presence in the United States, the BIA affirmed the IJ's removal decision.

## II.

We review the BIA's legal conclusions *de novo*. *Ntangsi v. Gonzales*, 475 F.3d 1007, 1011 (8th Cir. 2007). The underlying factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Chen v. Mukasey*, 510 F.3d 797, 800 (8th Cir. 2007).

Lopez-Gabriel first argues that he established a *prima facie* case that Officer Wiltrout stopped and arrested him based on race in violation of his constitutional rights. On that basis, he contends that the BIA should have suppressed the resulting evidence or at least afforded him an evidentiary hearing. He also contends that the interrogations by local police and ICE officers caused him to make involuntary statements, and that the IJ should have convened a hearing to consider this contention as well.

The exclusionary rule generally does not apply in a civil deportation proceeding. The Supreme Court explained that the high costs of applying the rule in

the immigration context – namely, releasing from custody persons who would then immediately resume their unlawful presence in the United States – outweigh the benefits of deterring unconstitutional conduct by federal immigration agents. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050 (1984). The Supreme Court has "repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials." *Pa. Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363 (1998). But because a plurality of the Supreme Court noted that its decision on immigration proceedings did not involve "egregious violations of Fourth Amendment or other liberties," *Lopez-Mendoza*, 468 U.S. at 1050, the application of the exclusionary rule to an immigration case involving such violations has not been resolved in this circuit.

The case for exclusion of evidence is even weaker where the alleged misconduct was committed by an agent of a separate sovereign. If evidence were suppressed in a federal civil immigration proceeding, any deterrent effect on a local police officer would be highly attenuated. *See United States v. Janis*, 428 U.S. 433, 457-58 (1976). The Court's holding in *Janis*, albeit arising from a civil tax proceeding, appeared to be categorical: "We therefore hold that the judicially created exclusionary rule should not be extended to forbid the use in the civil proceeding of one sovereign of evidence seized by a criminal law enforcement agent of another sovereign." *Id*. at 459-60. Especially where, as here, there is no evidence that federal officers participated in the allegedly unconstitutional seizure, or that the state officer making the seizure acted solely on behalf of the United States, *cf. Elkins v. United States*, 364 U.S. 206, 213 (1960), we doubt that even an egregious violation by a state officer would justify suppression of evidence in a federal immigration proceeding. *Cf. Puc-Ruiz v. Holder*, 629 F.3d 771, 778 (8th Cir. 2010) (deeming it unnecessary to decide the issue).

In any event, we agree with the BIA that the evidence of alleged "egregious violations" here was insufficient to warrant a hearing on the petitioner's motion to suppress. In his affidavit, Lopez-Gabriel stated only that he "feels" the police stopped

him because of his race, and he does not "believe" the police treated him the same way they would treat white people. He offered no facts to support his assumption that he was stopped and arrested based on his Hispanic appearance, so he was not entitled to a hearing. *See Wong Chung Che v. INS*, 565 F.2d 166, 168 (1st Cir. 1977); *Matter of Wong*, 13 I. & N. Dec. 820, 822 (BIA 1971); *see also Almeida-Amaral v. Gonzales*, 461 F.3d 231, 237 (2d Cir. 2006). The DHS, on the other hand, presented an unrebutted police report declaring that Officer Wiltrout stopped Lopez-Gabriel for driving with a heavily cracked windshield and arrested him for lack of proper identification. Lopez-Gabriel did not contest the admission of this report before the agency, so he cannot do so now, *see Renteria-Ledesma v. Holder*, 615 F.3d 903, 909 (8th Cir. 2010), and we see no reason in any case to believe that admission of the police report was fundamentally unfair. *See Nyama v. Ashcroft*, 357 F.3d 812, 816 (8th Cir. 2004) (per curiam) (holding that in civil immigration proceedings, "[t]he sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair") (internal quotations omitted). Because the record contains no support for Lopez-Gabriel's belief that the traffic stop and arrest were racially motivated, and because the DHS in any event justified the officer's actions, *see Rampasard v. U.S. Att'y Gen.*, 147 F. App'x 90, 92 (11th Cir. 2005) (per curiam); *Matter of Barcenas*, 19 I. & N. Dec. 609, 611 (BIA 1988), there was no need for a hearing or exclusion of evidence.

Lopez-Gabriel also argues that his statements to Officer Wiltrout and ICE agents were involuntary, and were thus used against him in violation of his rights under the Fifth Amendment. *See Bustos-Torres v. INS*, 898 F.2d 1053, 1057 (5th Cir. 1990). To establish that his statements were involuntary, Lopez-Gabriel "must show coercion, duress, or improper action" by an officer that overbore his will. *Puc-Ruiz*, 629 F.3d at 779; *United States v. Rodriguez-Hernandez*, 353 F.3d 632, 636 (8th Cir. 2003). The allegations presented to the immigration judge failed to establish a *prima facie* case of involuntariness. Without more, prompt questioning of a handcuffed detainee by an armed and uniformed officer without *Miranda* warnings, and

questioning by ICE agents after an arrest, are not sufficient to mandate a hearing or to justify suppression in an immigration proceeding. *See United States v. Drayton*, 536 U.S. 194, 205 (2002) ("The presence of a holstered firearm [carried by a uniformed officer] . . . is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon."); *Puc-Ruiz*, 629 F.3d at 779 ("[T]hat an alien has not received *Miranda*-like warnings will not render his statements inadmissible in a deportation hearing"); *United States v. Willie*, 462 F.3d 892, 897 (8th Cir. 2006) (holding that consent to search was not involuntary where handcuffed defendant was under arrest for a short time and not subjected to extended questioning); *United States v. Robinson*, 20 F.3d 320, 322-23 (8th Cir. 1994) (holding that defendant's statements were voluntary when made while handcuffed in the presence of several police officers, immediately after he was detained and without *Miranda* warnings). As noted by the immigration judge, Lopez-Gabriel did not submit evidence of "promises, prolonged interrogation, interference with his right to counsel, or other indicia of coercion or duress" that might suggest that his statements were involuntary.

*     *     *

The petition for review is denied.

_____