# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3860

_____

Juan Alberto Martinez Carcamo and
Roberto Carlos Garcia Nuñez

*Petitioner*s

v.

Eric H. Holder, Jr., Attorney
General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 16, 2012
Filed: April 19, 2013

_____

Before RILEY, Chief Judge, COLLOTON and GRUENDER, Circuit Judges.

_____

RILEY, Chief Judge.

In an early morning immigration raid, United States Immigration and Customs Enforcement (ICE) officers entered the trailer home of Juan Martinez Carcamo (Martinez) and Roberto Garcia Nuñez (Garcia) without a warrant and, according to Martinez and Garcia, without consent. The officers arrested both men, and the government began removal proceedings. An Immigration Judge (IJ) denied

Martinez's and Garcia's motions to suppress the evidence uncovered by the warrantless entry. In her order, the IJ conflated Martinez's testimony with that of his son, Jorge Martinez Reyes (Jorge). Martinez and Garcia appealed to the Board of Immigration Appeals (Board) after the IJ ordered them removed from the United States. The Board dismissed their appeal in an order which repeated the IJ's error.

Both the IJ and Board found the officers' warrantless entry justified by exigent circumstances solely based on Jorge's yell to Garcia "not to open the door" because immigration officers were outside. Martinez and Garcia petition our court for review. Although we are troubled by the IJ's and Board's errors with respect to Martinez's testimony and by the ICE officers' alleged actions, the narrow scope of our review under 8 U.S.C. § 1252(b)(4) requires us to deny the petition.

## I.    BACKGROUND

Before approximately 6:00 a.m. on June 22, 2008, ICE officers—participating in "Operation Return to Sender"—knocked on the door of a trailer home in Shakopee, Minnesota, occupied by four Latino men: Martinez, Jorge, Garcia, and Garcia's father, Felix Garcia. The knocking awoke Jorge, who answered the door in his underwear. An ICE officer in plainclothes asked Jorge to come outside to check on his van. Jorge, thinking that a long ladder on his van might be "bothering somebody," stepped outside. The officer then asked Jorge for his license. Jorge said he had none. The officer told Jorge to go back inside to put on shoes and a shirt "because we're going to take you with us." By that point, Jorge noticed the officer's badge and the five other ICE officers surrounding the trailer. Jorge refused to go back in and yelled to Garcia "not to open the door, because it was Immigration." Jorge then tried to make a cell phone call, but the officers took the phone away, handcuffed him, and placed him in a van.

The noise woke Garcia, who looked out the window and heard someone bang on the door. Garcia opened the door, which an ICE officer then pushed in. The

-2-

officer showed Garcia a photo, and asked Garcia if he recognized the person in the photo. Garcia said he did not. The officer then identified himself as an immigration officer. According to Garcia, the officers entered the trailer without his consent. Martinez's U.S. Department of Homeland Security Form I-213 ("Record of Deportable/Inadmissible Alien"), signed by Immigration Officer Allen D. Gay, noted "Garcia . . . consented to the entry of ICE officers." Garcia's I-213 form, signed by Deportation Officer Scott Ludwig, said "Consent to enter the residence was given by Subject." Neither Gay, Ludwig, nor any ICE officer who entered the trailer testified at the suppression hearing. After entering the trailer, the officers arrested Garcia and put him in the van with Jorge.

Martinez, who was in one of the trailer's bedrooms, awoke to the sound of loud knocking on the trailer's door. He was still in bed when an ICE officer opened the door to his bedroom, came in, and told him to put his "hands up." The officer pulled off Martinez's blanket, and Martinez got up. The officer asked Martinez "if [he] had documents." Martinez said no. The officer asked if Martinez had a passport, and Martinez said yes. Martinez began to "look for [his passport] in [his] suitcase," but the officer told Martinez to stop. The officer searched and found the passport, then took Martinez into the living room of the trailer and shackled him.[1]

Martinez later testified he had no "claim to permanent resident status in the United States," but refused to say whether he had "any claim to citizenship status in the United States." His Honduran passport listed his nationality as "Hondureña" (i.e., Honduran) and his birthplace as "Honduras." Martinez presented no evidence of legal entry to the United States.

---

[1]Martinez was not allowed to eat anything before being taken away, and Martinez did not receive food until "very late" that day. Martinez testified he "felt weak and faint" while waiting to be questioned.

Garcia refused to say whether he was a U.S. citizen and testified he "d[id]n't know" whether he had "a claim to lawful permanent residence in the United States." Garcia's passport, from El Salvador, listed his birthplace as "Teotepeque, La Libertad"[2] and his nationality as "Salvadoreña" (i.e., Salvadoran). Garcia presented no evidence of legal entry into the United States.

## A.    IJ's Decisions

In separate motions filed October 8, 2008, Martinez and Garcia asked the IJ to suppress the evidence—notably their passports—obtained as a result of the ICE officers' warrantless entry into the trailer home. After a suppression hearing on November 3, 2009, the IJ denied their motions in an order dated January 11, 2010. In the order, the IJ repeatedly inverted Garcia's name, interchangeably referring to him as "Nunez," "Nunez-Garcia," and "Garcia-Nunez." Garcia's passport lists his last name as "Garcia Nuñez."

In the same order, the IJ questioned the credibility of Martinez's account and found "insufficient credible evidence to support the motions." But this conclusion appears to be the result of the IJ's own erroneous view of the evidence: the IJ misstated and conflated Martinez's and Jorge's testimonies. The IJ's order stated Martinez "testified at the suppression hearing that he was asleep in the livingroom of the trailer when someone knocked at the door." In truth, this was the testimony of Martinez's *son* Jorge, not Martinez. The rest of the IJ's recounting of Martinez's testimony continued in this vein, stating Martinez—not Jorge—"yelled to the people in the house, 'Don't open the door. It's the [sic] Immigration.'" Jorge had testified he yelled "not to open the door, because it was Immigration."

---

[2]La Libertad is one of the fourteen departments (administrative divisions) of El Salvador. See Cent. Intelligence Agency, El Salvador, The World Factbook (2013), https://www.cia.gov/library/publications/the-world-factbook/geos/es.html.

The IJ then compared *Martinez's* affidavit with *Jorge's* testimony, which she believed to be Martinez's:

> However, [Martinez] filed a sworn affidavit . . . which states that he was asleep in his bedroom with the door closed when an ICE agent walked in and said, "Hands up!["] in Spanish.

Unsurprisingly, the IJ found Martinez's affidavit, which said he was asleep when an ICE officer entered his room, created "glaring inconsistencies," because the affidavit did not match *Jorge's* testimony (which the IJ thought was Martinez's testimony) that he was asleep in the living room when ICE officers knocked on the door. Martinez's actual testimony at the suppression hearing appears to be entirely consistent with his affidavit.

However, the IJ did not deny the motions solely on the basis of her factual mistake. Assuming Martinez's and Garcia's accounts were true, the IJ explained she would still deny the motions because even if there were a Fourth Amendment violation, the officers' conduct was insufficiently egregious to merit exclusion. Again confusing the identities of Martinez and his son, she wrote, "The *respondent* [(i.e., Martinez)] essentially created exigent circumstances when he yelled not to open the door because immigration was there. The officers could at that point reasonably believe that there was someone in the trailer with an immigration problem[—]perhaps their fugitive." (Emphasis added). The IJ did not explain how that reasonable belief alone amounted to exigent circumstances.

On January 14, 2010, the IJ signed an oral decision finding Martinez and Garcia removable:

> Based upon the information contained in the I-213's in each case, the Court is satisfied that the respondents are not citizens or nationals of the United States, that Mr. Martinez is a citizen of Honduras, and Mr.

Garcia is a citizen of El Salvador. The alienage of the respondents having been established, the burden shifts to the respondents to establish the date, place, and manner of entry. The respondents each have declined to offer any additional evidence concerning their manner of entry, and the Court finds the evidence contained in the I-213 sufficient as well to establish that they are, in fact, in the United States without having been properly admitted or paroled after inspection by an Immigration officer.

In accordance with that finding, the IJ ordered Martinez and Garcia removed from the United States to Honduras and El Salvador, respectively.

## B.    Board's Decision

Martinez and Garcia appealed to the Board, which agreed with the IJ's decision and dismissed the appeal. Instead of catching the IJ's factual mistake, the Board repeated it: "As noted by the [IJ], *Juan Alberto* Martinez' [sic] testimony shows that he created an exigent circumstance when he yelled at the other residents in his home not to open the door because immigration officials were present." (Emphasis added). The Board found "no clear error in the [IJ]'s factual findings" on the suppression issue. The Board determined, "even accepting [Martinez's and Garcia's] testimon[ies] as true, they have not shown that the method by which the evidence was obtained was 'egregious.'" Concluding that exclusion was not warranted, the Board cited our decision in Puc-Ruiz v. Holder, 629 F.3d 771 (8th Cir. 2010), and the Supreme Court's decision in INS v. Lopez-Mendoza, 468 U.S. 1032 (1984).

Reviewing the IJ's decision on removability, the Board found "no error in the [IJ]'s consideration of the evidence in the record relating to [Martinez's and Garcia's] alienage." Noting Martinez and Garcia "do not allege that the Form I-213 relating to them is inaccurate," the Board decided "removability ha[d] been established by clear, unequivocal, and convincing evidence." Martinez and Garcia petition us for review under 8 U.S.C. § 1252.

## II.    DISCUSSION

Presented with a § 1252 petition, we review the Board's "legal conclusions *de novo*," Lopez-Gabriel v. Holder, 653 F.3d 683, 685 (8th Cir. 2011), but accord substantial deference to the Board's interpretation of ambiguous immigration statutes, see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-45 (1984), and agency regulations, see Auer v. Robbins, 519 U.S. 452, 457-58 (1997). See also Ortega-Marroquin v. Holder, 640 F.3d 814, 818 (8th Cir. 2011). Congress has authorized us to review the Board's factual findings only under the substantial evidence standard: "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see Chen v. Mukasey, 510 F.3d 797, 800 (8th Cir. 2007). We will also review, as part of the agency's final action, the IJ's decision "to the extent that the [Board] adopted the findings or the reasoning of the IJ." Davila-Mejia v. Mukasey, 531 F.3d 624, 627 (8th Cir. 2008).

Martinez and Garcia have nominally raised four issues in their petition for review, but this petition actually presents two distinct issues. First, Martinez and Garcia argue the evidence obtained as a result of the ICE officers' warrantless entry into the trailer must be suppressed because the officers' conduct was an egregious violation of the Fourth Amendment. Second, Martinez and Garcia argue the removal proceedings did not provide them with Fifth Amendment due process because the Board failed to "engage in a *meaningful* review of each claim [they] presented," notably by failing to correct the IJ's clearly erroneous conflation of Martinez's and Jorge's testimonies.

### A.    Suppression of Evidence

We have observed that the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," applies as much to illegal aliens inside this

country[3] as it does to citizens.  See United States v. Quintana, 623 F.3d 1237, 1239 (8th Cir. 2010); United States v. Uscanga-Ramirez, 475 F.3d 1024, 1027 (8th Cir. 2007).  To deter violations of this right, the Supreme Court long ago developed the exclusionary rule.  See Weeks v. United States, 232 U.S. 383, 398 (1914).  The rule, "when applicable, forbids the use of improperly obtained evidence at trial."  Herring v. United States, 555 U.S. 135, 139 (2009).  Given its "substantial social costs," United States v. Leon, 468 U.S. 897, 907 (1984), "the exclusionary rule is not a remedy we apply lightly," Sanchez-Llamas v. Oregon, 548 U.S. 331, 347 (2006).  The rule is a "prudential doctrine," Davis v. United States, 564 U.S. ___, ___, 131 S. Ct. 2419, 2426 (2011) (internal quotation omitted), "not a personal constitutional right," Stone v. Powell, 428 U.S. 465, 486 (1976).  Therefore, "[t]he fact that a Fourth Amendment violation occurred . . . does not necessarily mean that the exclusionary rule applies."  Herring, 555 U.S. at 140.  The critical question before us, then, is not whether Martinez's and Garcia's rights were violated but whether they are "entitled to the remedy for which [they] appl[y]."  Marbury v. Madison, 5 U.S. (1 Cranch) 137, 168 (1803).

If the "massive remedy," Hudson v. Michigan, 547 U.S. 586, 595 (2006), of exclusion is ever appropriate in the civil context of a removal proceeding, it should be granted only because of an "egregious" or "widespread" Fourth Amendment violation.  Lopez-Mendoza, 468 U.S. at 1050-51; see also Puc-Ruiz, 629 F.3d at 778.  We have not had occasion to join other circuits in holding an egregious or widespread

---

[3]Cf. United States v. Verdugo-Urquidez, 494 U.S. 259, 274-75 (1990) (holding the Fourth Amendment did not apply to a warrantless search of an alien's home *outside* the United States); id. at 278 (Kennedy, J., concurring) ("If the search had occurred in a residence *within* the United States, I have little doubt that the full protections of the Fourth Amendment would apply." (emphasis added)).  For the purposes of this opinion, we assume, without deciding, the Fourth Amendment protects illegal aliens within the United States.  If the Fourth Amendment does not apply, we would not need to perform the egregiousness analysis hereafter, and the analysis would end here.

violation affirmatively compels exclusion in a removal proceeding,[4] and we need not decide today whether to do so. See Lopez-Gabriel, 653 F.3d at 686. Assuming Martinez's and Garcia's accounts of the ICE officers' conduct are true, any Fourth Amendment violations[5] they suffered were not sufficiently egregious to entitle them to the remedy they seek—exclusion of decisive evidence in a civil removal proceeding.

### 1. Egregiousness

We have not developed "an exhaustive list of the conduct that could constitute an egregious constitutional violation," Puc-Ruiz, 629 F.3d at 779, and in previous cases our egregiousness inquiry has been neither mechanical nor formulaic. See, e.g., Garcia-Torres v. Holder, 660 F.3d 333, 336-37 (8th Cir. 2011). Consistent with this approach, we have expressly rejected the Ninth Circuit's "bad faith" standard. Compare Gonzalez-Rivera v. INS, 22 F.3d 1441, 1448-49 (9th Cir. 1994) (holding

___

[4]See, e.g., Oliva-Ramos v. Att'y Gen., 694 F.3d 259, 272, 277-80 (3d Cir. 2012) (requiring exclusion "where constitutional violations by immigration officers are 'widespread' or evidence has been obtained as a result of 'egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained'" (quoting Lopez-Mendoza, 468 U.S. at 1050-51)); Almeida-Amaral v. Gonzales, 461 F.3d 231, 235 (2d Cir. 2006).

[5]Because answering the constitutional question whether an unreasonable search occurred is not necessary to a resolution of this case, the prudential rules of constitutional avoidance famously articulated by Justice Brandeis in his concurrence with Ashwander v. Tennessee Valley Authority, 297 U.S. 288 (1936), lead us to avoid that question. See id. at 346-47 (Brandeis, J., concurring). In declining to answer, we expressly do not endorse the position taken by the IJ and Board that Jorge's yell "not to open the door, because it was Immigration" necessarily alone created exigent circumstances, although officer safety is always a consideration. There is no unlawful alien exception to the warrant requirement. Cf. Arizona v. United States, 567 U.S. ___, ___, 132 S. Ct. 2492, 2505 (2012) ("As a general rule, it is not a crime for a removable alien to remain present in the United States.").

a "bad faith" violation is an egregious violation), with Garcia-Torres, 660 F.3d at 337 n.4 (declining "to adopt the Ninth Circuit's standard . . . that an 'egregious violation' is nothing more than a 'bad faith' violation"). Instead, like the Third Circuit, we do not consider a "one-size-fits-all approach" appropriate in this context. Oliva-Ramos, 694 F.3d at 279. As in Puc-Ruiz, Garcia-Torres, and Lopez-Gabriel, we look to the totality of the circumstances to determine whether a constitutional violation is egregious.

### 2. Present Case

Martinez and Garcia argue that the ICE officers' conduct in this case was egregious for three reasons: (1) the officers invaded an area—the home—at the heart of the Fourth Amendment's protections, (2) the officers acted based on race, and (3) the officers' violation was "deliberate." Each argument falls short.

The first reason fails because nothing in our previous cases indicates that an unreasonable search becomes an egregious search merely because it invades the privacy of the home. The Second Circuit, considering facts similar to those Martinez and Garcia allege, reached the same conclusion. See Flores Diaz v. Holder, 430 F. App'x 36, 38 (2d Cir. 2011) (summary order).

The second ground fails because it is unsupported by the record. Martinez and Garcia's bare allegation in their brief that "the only evidence the agents possessed was that Jorge appeared to be Hispanic" is directly contradicted by Jorge's own testimony: "the [officer] asked me to show him my license, and I told him that I don't have a license. And then he told me to show him an ID, and I told him I don't have either." To be sure, Jorge's inability to produce identification did not, by itself, give the ICE officers reasonable suspicion to believe the other residents of the trailer were removable aliens. See, e.g., United States v. Cortez, 449 U.S. 411, 417-18 (1981) ("[O]fficers must have a *particularized* and objective basis for suspecting the *particular* person stopped of criminal activity." (emphasis added)). But Martinez and

-10-

Garcia's subjective belief they were targeted because of their race cannot establish egregiousness because they have presented no articulable *facts* to support their bare allegation.  See Almeida-Amaral, 461 F.3d at 237.

The third argument—that a violation becomes egregious if it is deliberate—is barely distinguishable from one we rejected in Garcia-Torres, 660 F.3d at 337 n.4. Martinez and Garcia's deliberateness argument is little more than a repackaging of the Ninth Circuit's "bad faith" standard.  See, e.g., Orhorhaghe v. INS, 38 F.3d 488, 493 (9th Cir. 1994) (considering "whether the agents committed violations *deliberately*" (emphasis added)).  The Supreme Court has "repeatedly rejected attempts to introduce this kind of subjectivity into Fourth Amendment analysis." Brendlin v. California, 551 U.S. 249, 260 (2007).  We decline to allow the Fourth Amendment rights of citizens or aliens to turn on a federal agent's personal state of mind.

For these reasons, we perceive no *egregious* violation of the Fourth Amendment in Martinez's and Garcia's accounts of June 22, 2008.  Though the record alludes to Fourth Amendment violations by ICE officers in other cases, Martinez and Garcia have not argued—and the record before us does not sufficiently establish—that "Fourth Amendment violations by [immigration] officers were widespread," Lopez-Mendoza, 468 U.S. at 1050.  Although Martinez and Garcia are not "without remedy," Marbury, 5 U.S. (1 Cranch) at 164; see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 395-96 (1971), they are not entitled to the particular remedy they seek here.

### B. Fifth Amendment Due Process

In order to comply with an alien's Fifth Amendment right to due process, removal hearings must be "fundamentally fair." Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004).  Fundamental fairness requires "the arbiter presiding over the hearing [to] be neutral and the immigrant [to] be given the opportunity to fairly

-11-

present evidence, offer arguments, and develop the record." Tun v. Gonzales, 485 F.3d 1014, 1025 (8th Cir. 2007). Martinez and Garcia argue that the administrative proceedings in their cases were not fundamentally fair because (1) the Board failed to correct the IJ's clear factual error, and (2) the IJ "cut short the suppression hearing before DHS was required to meet its burden to justify the illegal search of Petitioners' home." Neither argument justifies granting the petition.

### 1.    Clear Error

The government concedes both the IJ and Board clearly erred in their treatment of Martinez's and Jorge's testimonies, but argues the error does not necessitate remand because the error was not prejudicial. The government is correct.

The IJ's and the Board's careless treatment of Martinez's and Jorge's testimonies was clear error, and the conclusions based upon those errors "lack[] the support of substantial evidence." De Brenner v. Ashcroft, 388 F.3d 629, 636 (8th Cir. 2004). In order to obtain relief, however, "a petitioner under the immigration laws must show . . . . the outcome of the proceeding may well have been different had there not been any procedural irregularities." Tun, 485 F.3d at 1026. Martinez and Garcia have not shown this prejudice for a simple reason: the factual findings affected by the IJ's and Board's clear errors are relevant only to the Fourth Amendment issue. Martinez and Garcia do not dispute the factual findings on which the IJ's removal order is based, namely that they are aliens "in the United States without having been properly admitted or paroled after inspection by an Immigration officer."

It does not matter to the outcome whether Jorge yelled to keep the door closed, Garcia gave consent, or Martinez awoke to find an ICE officer in his bedroom *unless* the ICE officers' conduct justifies suppression. Because, as we explained earlier, the ICE officers' alleged conduct was not egregious enough to implicate the exclusionary rule, the IJ's and Board's clear factual errors cannot have affected "the outcome of the proceeding." Id. Martinez and Garcia have not identified any evidence indicating

the ultimate outcome—removal—"may well have been different" absent the error. Ikenokwalu-White v. Gonzales, 495 F.3d 919, 926 (8th Cir. 2007). The IJ's and Board's clear errors do not support granting the petition under 8 U.S.C. § 1252.

### 2. Burden Shifting

Relying on two Board decisions issued many years before the Supreme Court's decision in Lopez-Mendoza, Martinez and Garcia propose that once they made a prima facie case for a Fourth Amendment violation, the IJ should have shifted the burden to the government to prove the ICE officers' entry into the trailer was constitutional. See In re Burgos, 15 I. & N. Dec. 278 (BIA 1975); In re Wong, 13 I. & N. Dec. 820 (BIA 1971). The government responds that we lack jurisdiction to consider this proposition because Martinez and Garcia failed to raise this issue at the administrative level. Under 8 U.S.C. § 1252, we lack jurisdiction.

Section 1252(d)(1) precludes us from considering an issue unless the petitioner "has exhausted all administrative remedies available . . . as of right." A "petitioner has not exhausted administrative remedies with respect to" a particular issue if he "fails to raise [it] when he appeals to the Board." Ateka v. Ashcroft, 384 F.3d 954, 957 (8th Cir. 2004). The brief Martinez and Garcia submitted to the Board did not expressly raise the burden-shifting proposition they now ask us to consider.[6] Neither

---

[6]Martinez and Garcia's argument to the contrary relies on two sentences that did not mention burden shifting or reference the Board cases on which the burden-shifting proposition is based. Cf. Burgos, 15 I. & N. Dec. at 279; Wong, 13 I. & N. Dec. at 821-22. Their reliance is misplaced because these vague sentences were in the "Undisputed Facts & Procedural Posture" section of the brief submitted to the Board, and neither the "Issues For Review" nor "Argument" section contained even an oblique reference to burden shifting. See, e.g., Zhou Hua Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1316 n.3 (11th Cir. 2013) ("A party must 'specifically and clearly identif[y]' a claim in its brief, for instance *by devoting a discrete section of its argument to that claim*; otherwise, it will be 'deemed abandoned and its merits will not be addressed.'" (alteration in original) (emphasis added) (quoting Access Now,

did the Board's decision expressly address it. Martinez and Garcia's brief before the Board purported to "incorporate by reference all of the arguments made below in open court, and in the motions to suppress evidence, for discovery, to terminate removal proceedings, and memorandum of law submitted on their behalf." This broad attempt to incorporate unspecified arguments did not "raise" any particular issue before the Board. As we have long explained, indeterminate objections to broad swaths of the record are "totally insufficient to raise any question for review." Norwood v. United States, 45 F.2d 495, 496 (8th Cir. 1930). We certainly do not expect the Board to address veiled arguments we would not consider ourselves. See, e.g., Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004) (holding a claim waived because "there was no meaningful argument on th[e] claim in [the] opening brief").

Having no jurisdiction under 8 U.S.C. § 1252 over Martinez and Garcia's proposition that the IJ deprived them of due process by failing to shift the burden to the government, we do not reach the merits of this issue.[7]

## III. CONCLUSION

Without condoning the ICE officers' alleged conduct or the IJ's and Board's clear errors, we deny the petition for review in accordance with 8 U.S.C. § 1252.

_____

_____

Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004))). Because the Board was not put on notice of the burden-shifting proposition, the Board did not have an opportunity first to address, and thereby exhaust, the issue.

[7]To the extent Martinez and Garcia separately contend it was fundamentally unfair for the Board not to remand for further development of the record, we reject that contention on the merits. Because Martinez and Garcia had counsel before the IJ, the Board was not obligated to require the IJ "to fully develop the record." Al Khouri, 362 F.3d at 464 (internal quotation omitted).