# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-2899

_____

Armando Lopez-Fernandez; Nury Feliz-Jimenez[1]

*Petitioners*

v.

Eric H. Holder, Jr., Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: September 25, 2013
Filed: November 19, 2013

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Armando Lopez-Fernandez and Nury Felix-Jimenez (collectively, Petitioners) are husband and wife as well as natives and citizens of Mexico. They petition for

---

[1]Although the case caption lists Petitioner's name as "Feliz-Jimenez," we note that the record and briefing indicate that the Petitioner's name is spelled "Felix-Jimenez." We have retained the spelling used by the Petitioner.

review of a decision of the Board of Immigration Appeals (BIA) dismissing their appeal from an Immigration Judge (IJ) order denying their motion to suppress evidence and terminate deportation proceedings. The Petitioners assert that Immigration and Customs Enforcement (ICE) officers obtained evidence of their alienage, specifically their statements and passports, in violation of their rights under the Fourth Amendment. They also assert that the denial of an evidentiary hearing regarding suppression of that evidence violated their Fifth Amendment rights to due process of law. Because the Petitioners failed to present a prima facie case that the evidence could be suppressed, we deny the petition.

## I. Background

On December 9, 2008, six officers, including ICE agents and police officers, entered and conducted a search of the Petitioners' home in St. Louis, Missouri. Some of the agents were armed. While the officers were in their home, the Petitioners provided statements concerning their alienage and produced Mexican passports when asked for identification. With this information, the agents concluded that both of the Petitioners were illegal aliens and prepared a Record of Deportable/Inadmissible Alien Form (Form I-213) relating to each Petitioner. The Forms I-213 contained a narrative of events and findings as a result of the search. The Department of Homeland Security commenced removal proceedings and offered the Petitioners' respective Forms I-213 at those proceedings.

The Petitioners moved for an evidentiary hearing regarding the admissibility of the Forms I-213. They also moved to suppress the Forms I-213 and to terminate the proceedings. The Petitioners alleged Fourth Amendment violations with respect to the search, Fifth Amendment violations as to statements obtained during an unlawful custodial interrogation, and violations of internal agency regulations.

In support of their motions, the Petitioners each submitted affidavits detailing their versions of the officers' entry into and search of their home. Felix-Jimenez stated that, on the day in question, she was in the shower at approximately 7:00 a.m. when she heard banging on her front door. Approaching the door, she saw someone shining a flashlight in the window. She cracked open the door to see who was there, and "the door was forced open hard and six people charged in. . . . They did not identify themselves or ask for permission to enter; they just barged in." Pet'r's App. at 181. The six officers searched the home and questioned Felix-Jimenez. Later, when Lopez-Fernandez returned home, the Petitioners were both put in handcuffs and taken to the Detention and Removal office in St. Louis, Missouri. According to Felix-Jimenez, the officers were very intimidating, and she would not have answered their questions had she known that she did not have to do so.

Lopez-Fernandez stated via separate affidavit that when he returned home at approximately 8:00 a.m., six officers were inside his home. Lopez-Fernandez also asserted that it was "clear that [he] was not free to leave" and that the officers did not show him a warrant. Pet'r's App. at 188. Like Felix-Jimenez, Lopez-Fernandez stated he would not have answered the officers' questions if he had known that he did not have to do so.

The Forms I-213 contain a different version of the events. They reflect that a named informant contacted the State Highway Patrol, provided information regarding the use of false social security numbers by persons residing at the Petitioners' address, and requested an investigation into the immigration status of those persons. Acting on that information, the agents went to the Petitioners' home at 7:30 a.m., and Felix-Jimenez invited them in. Lopez-Fernandez soon returned home, and, after the Petitioners provided documentation, the officers determined that they were both illegal aliens and took them to the Detention and Removal Office.

The IJ declined to grant an evidentiary hearing and denied the Petitioners' motions to suppress the evidence and terminate the proceedings. First, the IJ held that the Fourth Amendment claim failed because the Petitioners' affidavits did not overcome the presumption of reliability typically afforded the Form I-213 for the following reasons: (1) the Forms I-213 were prepared the same day of the events, while the Petitioners' affidavits were prepared two years later, (2) the Petitioners' affidavits contained inconsistent details, (3) Felix-Jimenez's affidavit referred to subjective feelings rather than objective facts showing coercion or mistreatment, and (4) the parties did not dispute that the officers knocked on the door and waited for an occupant to answer. Second, the IJ rejected the Petitioners' claim that their statements were made during an unlawful custodial interrogation in violation of the Fifth Amendment. Specifically, the IJ found that the statements were given voluntarily, the failure to give Miranda-like warnings does not render statements inadmissible in a deportation hearing, and the Petitioners failed to show any improper action by the immigration officers warranting suppression of their statements. Finally, the IJ rejected Petitioners' claims that the agents violated agency regulations. The IJ then issued a final decision finding the Petitioners removable as charged and ordering them removed from the United States.

The Petitioners appealed to the BIA, which affirmed the IJ's decision and dismissed the appeal. The BIA found that the Petitioners failed to establish a prima facie case that the Government's evidence was unlawfully obtained. Therefore, the Petitioners could not transfer the burden to the Government to justify the manner in which they obtained the evidence. The BIA focused on the "significant discrepancies" between the Petitioners' affidavits and affirmed the IJ's conclusion.

## II. Analysis

In this appeal, the Petitioners have abandoned their claims that there were Fifth Amendment custodial interrogation or regulatory violations. Instead, the Petitioners

claim that they alleged sufficient facts before the IJ to demonstrate that the entry and search of their home was an egregious Fourth Amendment violation such that the statements and passports they provided during the search, which resulted in the officers' conclusions in the Forms I-213, should be suppressed. Moreover, they argue that failing to grant a suppression hearing violated their Fifth Amendment due process rights.

The BIA's legal determinations are reviewed de novo. Guardado-Garcia v. Holder, 615 F.3d 900, 902 (8th Cir. 2010). We review factual determinations by the BIA under the substantial evidence statutory standard: "'[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Puc-Ruiz v. Holder, 629 F.3d 771, 777 (8th Cir. 2010) (alteration in original) (quoting 8 U.S.C. § 1252(b)(4)(B)). If the BIA adopts the findings or reasoning of the IJ, we review the IJ's decision as part of the final agency action. Ismail v. Ashcroft, 396 F.3d 970, 974 (8th Cir. 2005). Here, the BIA found "no reason to disturb the Immigration Judge's decision," so we consider the decisions together.

The IJ and BIA concluded that the Petitioners did not allege a prima facie case of any Constitutional violation. However, we hold that, even if the Petitioners have alleged a Fourth Amendment violation, they do not allege a prima facie case of egregiousness to warrant exclusion of evidence in the deportation context. Because the BIA did not rest its decision on, nor discuss, the egregiousness of any alleged violations, we must do so.

A.

The Petitioners argue that the information contained within the Forms I-213 must be suppressed because the officers' conduct constituted an egregious Fourth

Amendment violation, and without the Forms I-213, the Petitioners contend, the Government cannot meet its burden of proving their alienage and removability.

The exclusionary rule generally does not apply in civil deportation proceedings when there is a Fourth Amendment violation standing alone. INS v. Lopez-Mendoza, 468 U.S. 1032, 1050 (1984). However, the Supreme Court has warned that "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained" may invoke use of the exclusionary rule. Id. at 1050-51. In expressing reluctance to apply the exclusionary rule in the deportation context, the Supreme Court balanced the likely social benefits of excluding unlawfully seized evidence against the likely costs. Id. at 1050. In particular, the deterrent value of the exclusionary rule is low due to the availability of alternative deportation procedures, while the social cost is high because courts would be compelled to suppress reliable evidence and then "release from custody persons who would then immediately resume their commission of a crime through their continuing, unlawful presence in this country." Id. "Even the objective of deterring Fourth Amendment violations should not require such a result." Id. at 1047.

We need not decide today whether to join other circuits in holding that an egregious Fourth Amendment violation affirmatively compels exclusion in a removal proceeding because the Petitioners have not alleged an egregious violation. See Martinez Carcamo v. Holder, 713 F.3d 916, 922 (8th Cir. 2013); Lopez-Gabriel v. Holder, 653 F.3d 683, 686 (8th Cir. 2011).[2] Before the Government will be called on

---

[2] We note that, to the extent that state or local officers were engaged in the conduct in question, we doubt that their conduct could ever establish an egregious violation justifying suppressing the evidence. See Lopez-Gabriel, 653 F.3d at 686. If evidence were suppressed in a federal civil immigration proceeding, any deterrent effect on a local police officer "would be highly attenuated." Id. (citing United States v. Janis, 428 U.S. 433, 457-58 (1976)).

to assume the burden of justifying the manner in which it obtained evidence, the Petitioners must present a prima facie case that the evidence can be excluded. Matter of Barcenas, 19 I. & N. Dec. 609, 611 (BIA 1988). Only after presenting this prima facie case is an evidentiary suppression hearing warranted. Id.; see also Lopez-Gabriel, 653 F.3d at 686 (holding that no hearing was necessary because the record contained no support for the allegations that any violations were egregious).

Our Circuit has not developed "an exhaustive list of the conduct that could constitute an egregious constitutional violation," but looks at the totality of the circumstances. Martinez Carcamo, 713 F.3d at 923 (quoting Puc-Ruiz, 629 F.3d at 779). We have enumerated examples of egregious circumstances, including "an unreasonable show or use of force in arresting and detaining," a decision to arrest and detain based on race or appearance, or the invasion of private property and detention of individuals "with no articulable suspicion whatsoever." Puc-Ruiz, 629 F.3d at 779 (emphasis omitted).

The Petitioners make two arguments that the agents' conduct was egregious. First, they argue that the officers had "no articulable suspicion whatsoever" to enter into and search their home. Second, read broadly, the Petitioners argue that the warrantless invasion into the private property of their home without consent was egregious. Both arguments fall short.

The first argument is contradicted by the record. "'Reasonable suspicion may be based on an informant's tip as long as it is sufficiently reliable.'" United States v. Quarles, 955 F.2d 498, 501 (8th Cir. 1992) (quoting United States v. Thompson, 906 F.2d 1292, 1245 (8th Cir. 1990)). In Puc-Ruiz, the officers were acting on information provided by an outside source. 629 F.3d at 775. We held that the subsequent arrest did not constitute an egregious violation because it was not a situation in which there was "*no* articulable suspicion whatsoever." Id. at 779. Similarly, the Forms I-213 submitted in the Petitioners' deportation proceedings state

that a named informant contacted the State Highway Patrol regarding information of possible illegal aliens living at the Petitioners' address. The Petitioners do not contest the fact that there was a tip, and the record does not suggest that the tip was unreliable or that it would not support articulable suspicion.

The second ground also falls short. An egregious violation requires more than a "mere garden-variety" violation. Garcia-Torres v. Holder, 660 F.3d at 336. "[N]othing in our previous cases indicates that an unreasonable search becomes an egregious search merely because it invades the privacy of a home." Martinez Carcamo, 713 F.3d at 923. In Lopez-Mendoza, Justice O'Connor does not directly address the distinguishing marks of an egregious violation, but cites to cases in which the BIA concluded that the constitutional violation at issue was egregious. 468 U.S. at 1051 n.5. Relevant to the present case, she noted Matter of Ramira-Cordova, where the BIA suppressed "evidence obtained as a result of a nighttime warrantless entry into the aliens' residence." Id. (citing Matter of Ramira-Cordova, No. A21 095 659 (Feb. 21, 1980)).

In Puc-Ruiz, the petitioner alleged that police officers arrested him without probable cause. 629 F.3d at 779. There was no allegation of unreasonable force, and the court found that any possible violations were not egregious. Id. The Garcia-Torres court held that "nothing more than a warrantless entry of business premises and arrest" was a "garden-variety," and not an egregious, Fourth Amendment violation. 660 F.3d at 336-37. In Martinez Carcamo, officers entered a home at 6:00 a.m. without a warrant or consent and began to search. 713 F.3d at 918-19. The officers took away one man's cell phone while he was trying to make a call and pulled a blanket off another man lying in his bed. Id. This conduct, without more, was not sufficiently egregious to warrant suppression of the evidence obtained as a result of the entry and search. Id. at 923.

The agents in this case received a tip from a named informant. The parties do not dispute that the officers first knocked on the door and Felix-Jimenez opened it. There is no evidence of egregious force in the manner of entry. Moreover, the entry occurred in the morning when the Petitioners were already awake, not in the middle of the night. Cf. Cotzojay v. Holder, 725 F.3d 172, 183 (2d Cir. 2013). Therefore, based on the totality of the circumstances surrounding the events described in the Petitioners' affidavits, we conclude that the Petitioners have not presented a prima facie case of an egregious Fourth Amendment violation. Accordingly, the IJ and BIA properly denied the Petitioners' motion to suppress.

## B.

Petitioners also argue that they were denied due process under the Fifth Amendment because they did not have the ability to testify and cross-examine witnesses in a hearing. To afford an alien due process under the Fifth Amendment, the removal hearings must be "fundamentally fair." Al Khouri v. Ashcroft, 362 F.3d 461, 464 (8th Cir. 2004). The Petitioners' argument fails because it is a reiteration of their Fourth Amendment claim. The outcome of their Fourth Amendment claim, which requires an egregious violation, necessarily determines whether the Petitioners have presented a prima facie case and, thus, whether a hearing is required. See Garcia-Torres, 660 F.3d at 337. They make no other claims that the proceedings were not fundamentally fair.

## III. Conclusion

We perceive no egregious Fourth Amendment violation in the Petitioners' affidavits describing the events that transpired in their home. Because a hearing is warranted only if the Petitioners present a prima facie case that the evidence should be excluded, and they have not demonstrated anything more than a possible Fourth Amendment violation, there is no prima facie showing to warrant an evidentiary

hearing.  Moreover, the Fifth Amendment is not violated for the failure to conduct a hearing.

The petition for review is denied.

_____