# United States Court of Appeals
## For the First Circuit

No. 15-2227

GUSTAVO ALBERTO CORADO-ARRIAZA,

Petitioner,

v.

LORETTA E. LYNCH,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Lipez, and Kayatta,
Circuit Judges.

Jonathan Ng, with whom Jason Panzarino and The Law Office of Johanna Herrero were on brief, for petitioner.
Lindsay B. Glauner, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, with whom Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and Linda S. Wernery, Assistant Director, were on brief, for respondent.

December 19, 2016

**LYNCH**, **Circuit Judge**.  Gustavo Corado-Arriaza petitions for review of the Board of Immigration Appeals' ("BIA") affirmance of an immigration judge's ("IJ") denial of his motion to suppress and consequent issuance of an order of removal.  We agree with the BIA's affirmance of the IJ's conclusion that Corado-Arriaza did not present a prima facie case that the search and seizure leading to his arrest amounted to an egregious violation of the Fourth Amendment.  We see no need to reach the independent grounds that support the BIA's conclusion.

The petition is denied.

I.

Corado-Arriaza, a native and citizen of Guatemala, entered the United States in June 2005 on a B-2 visitor visa that permitted him to remain in the United States until December 2005.[1] Corado-Arriaza does not dispute that he stayed in the United States beyond the expiration of his visa and resided, without lawful status, in Massachusetts until he was detained by United States Immigration and Customs Enforcement ("ICE") agents on February 27, 2013.

---

[1]    A B-2 visa is issued to a "visitor for pleasure" and permits the visitor to "be admitted for not more than one year," though the visitor "may be granted extensions of temporary stay in increments of not more than six months each."   8 C.F.R. § 214.2(b)(1); see Ibragimov v. Gonzales, 476 F.3d 125, 128 n.2 (2d Cir. 2007).

On that day, he was working as a cook in a restaurant in Wellesley, Massachusetts.[2] At around 10:30 A.M., Corado-Arriaza's manager and the head chef asked Corado-Arriaza to help them with something. Corado-Arriaza followed the manager into a fifteen-foot by fifteen-foot boiler room. Inside the room were four men dressed in khakis and boots. Corado-Arriaza's manager told him that the men wanted to talk to Corado-Arriaza and then left the room.

Two of the men moved in front of the door to block Corado-Arriaza's exit. They then identified themselves as ICE agents, and one of the agents asked him, "Are you Gustavo Gomez?" The agent showed him some papers, which he believed to be a warrant, that included a fuzzy black-and-white photo of a man who Corado-Arriaza said "was obviously not me." Corado-Arriaza told the agent that his name was not Gustavo Gomez, but rather Gustavo Corado-Arriaza. Corado-Arriaza later learned that Gustavo Gomez was a man who had worked at the restaurant before him. When the agent asked Corado-Arriaza for his identification, Corado-Arriaza provided him with his Guatemalan driver's license.

After Corado-Arriaza showed the agent his driver's license, the agents handcuffed his hands behind his back and began

---

[2] We take the facts from Corado-Arriaza's declaration in support of his motion to suppress, which the IJ and the BIA assumed to be true.

- 3 -

to question him about topics such as his date of birth and the names of his children. At one point, Corado-Arriaza heard one of the agents say, "It's not a match. The date of birth and the name of the wife and son aren't the same." Nonetheless, the agents continued to question Corado-Arriaza about his identity, and they searched his pockets and his wallet. Corado-Arriaza continued to tell them that he was not the man for whom they were looking, and he "feared that it was going to go on and on if I didn't answer all of their questions."

When asked by the agents whether he had a green card, Corado-Arriaza answered "no," and did so "because I didn't feel like I had any option but to answer their questions." At some point, Corado-Arriaza told the agents that his passport was in his jacket in the restaurant. After the agents retrieved the jacket, they asked Corado-Arriaza how he had come to the United States, and he told them that he had arrived on a visa.

Though the agents were carrying firearms, they did not brandish them or point them at Corado-Arriaza. Nor does he allege that the agents yelled at him or threatened him. Corado-Arriaza did state, however, that the agents never read him his rights or told him that he could call a lawyer.

The agents then placed Corado-Arriaza, still handcuffed, in the back of their vehicle. Corado-Arriaza overheard the agents saying, "What should we do with this guy?" One of the agents

received a phone call, and Corado-Arriaza heard him say, "not the target, but we got someone else." The agents then told Corado-Arriaza that he was being arrested for overstaying his visa.

## II.

On February 27, 2013, the Department of Homeland Security ("DHS") served Corado-Arriaza with a Notice to Appear that charged him with removability under 8 U.S.C. § 1227(a)(1)(B) on the basis that he had remained in the United States beyond the six months permitted by his B-2 visa. On June 11, 2013, Corado-Arriaza, through counsel, denied the allegations in the Notice to Appear. DHS filed amended factual allegations on July 19, 2013, clarifying the date that Corado-Arriaza was admitted into the United States (June 27, 2005) and the date on which his B-2 visa expired (December 25, 2005). Corado-Arriaza denied these factual allegations.

In support of its allegations, DHS submitted a copy of Corado-Arriaza's passport and an Arrival/Departure Form known as a Form I-94. See 8 C.F.R. § 264.1(a). The Form I-94 is a registration form that "includes the collection of arrival/departure and admission or parole information by DHS, whether in paper or electronic format, which is made available to the person about whom the information has been collected, as may be prescribed by DHS." Id. § 1.4. Corado-Arriaza's Form I-94 lists his name as "Gustavo Alberto Corado Arriaza," his date of

birth as June 6, 1981, and his citizenship as Guatemalan. It also lists his arrival date as June 27, 2005, and it is stamped with the date "DEC 25 2005," which the government identifies as the date through which Corado-Arriaza was authorized to remain in the United States. Corado-Arriaza does not dispute that the information contained in the Form I-94 is sufficient to establish his removability.

During a hearing before the IJ, counsel for the government informed the IJ that he obtained the Form I-94 -- after Corado-Arriaza's arrest -- by contacting United States Customs and Border Protection ("CBP"), which, like ICE, is an agency within DHS. Corado-Arriaza acknowledges that the government was already in possession of the Form I-94 well before his arrest and that the Form I-94 played no role in his arrest.

On December 9, 2013, Corado-Arriaza filed a motion to suppress "all evidence, physical and testimonial, obtained as the fruit of the Immigration and Customs Enforcement's . . . unlawful search, seizure, interrogation, arrest, and detention which occurred on or about February 27, 2013." Specifically, he moved for suppression of his passport and the Form I-94. Corado-Arriaza argued that these documents should be suppressed, as relevant here, (1) because they were obtained as the result of an "egregious" violation of the Fourth Amendment, see INS v. Lopez-Mendoza, 468 U.S. 1032, 1050 (1984) (plurality opinion), and (2) because they

were obtained in violation of DHS regulations. In support of his motion, he submitted a declaration attesting to the facts about his encounter with ICE described above.

On January 14, 2014, the IJ, following a merits hearing, issued an oral decision denying Corado-Arriaza's motion to suppress.[3] The IJ correctly noted that the exclusionary rule does not apply to searches and seizures in civil immigration proceedings unless the alien can show "egregious violations of [the] Fourth Amendment." Id. at 1050. The IJ found that Corado-Arriaza failed to "allege[] facts in his declaration which, even if true, would provide a reason to suppress the contested evidence."[4]

The IJ also noted that the government had stated during the hearing that the Form I-94 was obtained independently of Corado-Arriaza's seizure, and that Corado-Arriaza had offered no evidence "that the ICE agents obtained the I-94 during questioning."

On September 17, 2015, the BIA affirmed the IJ's denial of Corado-Arriaza's motion to suppress. The BIA held that

---

[3]    Corado-Arriaza also filed a motion to terminate proceedings, which the IJ denied, and a request for voluntary departure, which the IJ granted. Corado-Arriaza presents no developed argument independently challenging the denial of his motion to terminate. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[4]    Corado-Arriaza did not present a claim to the IJ that he was the subject of race discrimination, and he has not disagreed with the government's assertion that the claim was not exhausted.

"[a]ssuming the facts as presented by the respondent to be true, and assuming that his arrest was illegal (an issue that we do not need to reach), we uphold the Immigration Judge's determination that based on the totality of the circumstances, the respondent did not meet his burden of establishing a prima facie egregious violation of the Fourth Amendment."  The BIA explicitly rejected Corado-Arriaza's argument that he had shown egregiousness because he had felt intimidated and not free to leave, citing case law explaining that that did not render his responses nonconsensual. See INS v. Delgado, 466 U.S. 210, 216 (1984).  It also explicitly rejected his argument that it was enough to show that the agents were visibly armed, citing case law stating that the presence of a holstered firearm carried by a uniformed officer is unlikely to contribute to coerciveness absent active brandishing of the weapon.  See United States v. Drayton, 536 U.S. 194, 205 (2002). It further found that nothing about the conduct of the agents undermined the reliability of the evidence DHS had proffered.

The BIA also "agree[d] with the Immigration Judge that even if circumstances were considered to rise to the level of 'egregious,' the DHS presented sufficient independent evidence to establish removability" through the Form I-94.

In addition, the BIA rejected Corado-Arriaza's argument that alleged regulatory violations by the ICE agents warranted suppression.  The BIA also noted that whether or not the "arrest"

was illegal had no bearing on Corado-Arriaza's removal proceedings.

This petition for review followed.

### III.

"Since 'the BIA adopted and affirmed the IJ's ruling, and discussed some of the bases for the IJ's opinion, we review both the BIA's and IJ's opinions.'" Saucedo v. Lynch, 819 F.3d 526, 531 (1st Cir. 2016) (quoting Idy v. Holder, 674 F.3d 111, 117 (1st Cir. 2012)). We review the resolution of legal issues, including whether evidence is suppressible, de novo. Garcia-Aguilar v. Lynch, 806 F.3d 671, 675 (1st Cir. 2015).

In Lopez-Mendoza, the Supreme Court held that the exclusionary rule generally does not apply in removal proceedings. 468 U.S. at 1050. This court has noted that Lopez-Mendoza provides "only a 'glimmer of hope of suppression.'" Kandamar v. Gonzales, 464 F.3d 65, 70 (1st Cir. 2006) (quoting Navarro-Chalan v. Ashcroft, 359 F.3d 19, 22 (1st Cir. 2004)). Specifically, Corado-Arriaza must have established that the search and seizure at issue amounted to an "egregious violation[] of [the] Fourth Amendment" that so "transgress[ed] notions of fundamental fairness and undermine[d] the probative value of the evidence obtained," as to constitute a Fifth Amendment violation of the right to due process. Lopez-Mendoza, 468 U.S. at 1050-51 & n.5.

- 9 -

Like the BIA, we bypass the question of whether there was any Fourth Amendment violation. See Martinez–Medina v. Holder, 673 F.3d 1029, 1034 (9th Cir. 2011) ("[W]e need not and do not decide whether the seizure violated Petitioners' Fourth Amendment rights because we conclude that, even if [it did], the violation was not egregious."); Yanez-Marquez v. Lynch, 789 F.3d 434, 451 (4th Cir. 2015); Martinez Carcamo v. Holder, 713 F.3d 916, 922-23 (8th Cir. 2013). We also need not spell out the precise conduct that would rise to the level of an egregious violation, see Garcia-Aguilar, 806 F.3d at 676 n.4, because it is plain from "the totality of the circumstances" that the conduct here fell short, see Martinez Carcamo, 713 F.3d at 922-23.

We likewise reject Corado-Arriaza's alternative argument that suppression is warranted because, he alleges, the ICE agents violated two regulatory provisions: 8 C.F.R. § 287.3(c) (requiring that an alien arrested without a warrant and placed in formal proceedings be apprised of the reason for his arrest, his right to representation, and that any statement he makes may be used against him in a subsequent proceeding), and 8 C.F.R. § 287.8(b)(1) ("An immigration officer, like any other person, has the right to ask questions of anyone as long as the immigration officer does not restrain the freedom of an individual, not under arrest, to walk away."). These regulations, even if violated, do not furnish aliens with a right to suppression in removal proceedings.

- 10 -

Navarro-Chalan, 359 F.3d at 23 ("[8 C.F.R. §§ 287.3(c) and 287.8(b)(1)] 'do not, are not intended to, shall not be construed to, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter, civil or criminal.'" (quoting 8 C.F.R. § 287.12)); see also, e.g., Yanez-Marquez, 789 F.3d at 474.

IV.

The petition for review is denied.