**Werquely Jeanini ALMEIDA–AMARAL, Petitioner,**

v.

**Alberto GONZALES,\* Attorney General of the United States, Respondent.**

**Docket No. 04–5841–AG.**

United States Court of Appeals, Second Circuit.

Argued: May 16, 2006.

Decided: Aug. 24, 2006.

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as the respondent in this case.

Kai W. De Graaf, New York, N.Y., for Petitioner.

Robert M. Spector, Assistant United States Attorney (William Nardini, Assistant United States Attorney, on the brief) for Kevin J. O'Connor, United States Attorney for the District of Connecticut, New Haven, Conn., for Respondent.

Before: CARDAMONE, CALABRESI, and POOLER, Circuit Judges.

CALABRESI, Circuit Judge.

Petitioner Werquely Jeanini Almeida–Amaral ("Almeida–Amaral" or "petitioner") seeks review of a decision by the Board of Immigration Appeals ("BIA") dismissing his appeal from an Immigration Judge's ("IJ") decision that denied both his motion to suppress evidence for an alleged Fourth Amendment violation and his motion to terminate the removal proceedings against him. For the reasons stated below, we conclude that the BIA's decision was not in error, and we therefore deny Almeida–Amaral's petition.

## BACKGROUND

Late on the night of January 26, 2003, Almeida–Amaral was approached by a uniformed border patrol agent just as he entered, by foot, the parking lot of a gas station adjacent to a restaurant along a highway in southern Texas. The agent instructed petitioner to stop and requested identification from him. In response, petitioner showed the officer his Brazilian passport, at which point he was arrested and taken into custody. At that time, Almeida–Amaral, who was then 17 years old, gave a statement to the arresting offi-

cer, which became the basis of an I–213 form (Record of Deportable/Inadmissible Alien) maintained by the Immigration and Naturalization Service ("INS"). That form recorded that petitioner was "a citizen and national of Brazil by birth," and was "illegally in the United States." Thereafter, petitioner was served with a Warrant and Notice to Appear before an Immigration Judge ("IJ") in Chicago, Illinois. After being released into the custody of his cousin, who lived in New York, Almeida–Amaral successfully moved for a change of venue from Chicago to New York.

Proceedings before an IJ in New York began on March 26, 2003. At that time, petitioner filed a motion to suppress evidence and terminate the removal proceedings forthwith. The motion sought to exclude the "statement taken [from] the [petitioner] and any and all other evidence procured in violation of the law used to commence these removal proceedings." In support of this motion, Almeida–Amaral made two arguments. First, he contended that his arrest was an illegal seizure under the Fourth Amendment of the Constitution. He also claimed that, because he was an unaccompanied minor when he spoke to the arresting agent in January 2003, his statements were inadmissible under INS regulations. Apart from the I–213 form derived from petitioner's statement, the record before the IJ included a copy of petitioner's Brazilian passport and an affidavit from Almeida–Amaral's mother stating that petitioner was a native and citizen of Brazil. Petitioner did not admit to deportability nor did he assert any asylum-related claims.

On June 18, 2003, the IJ denied petitioner's suppression motion as well as his motion to terminate the proceedings. Finding that Almeida–Amaral's removability had been established by clear and convincing evidence, the IJ ordered petitioner deported.

On appeal to the BIA, petitioner asserted substantially the same arguments he raised before the IJ. On October 5, 2004, the BIA denied petitioner's appeal by per curiam opinion. The BIA found that there was "no evidence that [petitioner] was under arrest when the officer asked to see his identification," and therefore no Fourth Amendment violation. Moreover, the BIA maintained that an ordinary violation of the Fourth Amendment, even if established, would not justify suppression of evidence in a civil deportation hearing. Concluding that there was "nothing unreasonable or egregious about the officer's encounter" with Almeida–Amaral, the BIA affirmed the IJ's denial of petitioner's motion to suppress.

The BIA also found unavailing petitioner's alternate argument that he was an unaccompanied minor when he spoke with the arresting agent. After considering *In Re Gomez–Gomez*, 23 I. & N. Dec. 522 (BIA 2002), the BIA emphasized (1) that petitioner was 17 years old at the time of his arrest and (2) that his mother had confirmed the relevant facts contained in the I–213 form.

Almeida–Amaral subsequently filed a timely petition to review the BIA's decision. Petitioner argues to us that, because the uniformed agent was wearing a firearm and because he commanded petitioner to "Stop," petitioner was seized without any cause whatsoever in clear violation of his constitutional rights. He also maintains that because he was an unaccompanied minor when he was arrested, his statement is inadmissible.

## DISCUSSION

█ It is well-settled that we review the factual findings of the BIA for substantial evidence. *See* 8 U.S.C. § 1252(b)(4)(B);

*Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 (2d Cir.2004). It is equally well-settled that, on appeal, issues of law are reviewed *de novo.* *See Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003).

The government bears the burden of proving removability by clear and convincing evidence. *Woodby v. INS,* 385 U.S. 276, 286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). But, "the INS must show only identity and alienage; the burden then shifts to the respondent to prove the time, place, and manner of his entry." *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1039, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984).

The question presented by this appeal therefore is whether the government's evidence establishing that Almeida–Amaral is removable should have been excluded.

### A. Petitioner's Fourth Amendment Challenge

In *Lopez–Mendoza* the Supreme Court held that a Fourth Amendment violation does not, by itself, justify suppression of evidence in the course of a civil deportation proceeding: "Important as it is to protect the Fourth Amendment rights of all persons, there is no convincing indication that application of the exclusionary rule in civil deportation proceedings will contribute materially to that end." *Lopez–Mendoza,* 468 U.S. at 1046, 104 S.Ct. 3479. The Court qualified this ruling in two significant ways. First, it stated that its "conclusions concerning the exclusionary rule's value might change, if there developed good reason to believe that Fourth Amendment violations by INS officers were widespread." *Id.* at 1050, 104 S.Ct. 3479. And, second, it explained that its holding did not necessarily pertain to circumstances involving "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the proba-

tive value of the evidence obtained." *Id.* at 1050–51, 104 S.Ct. 3479.

Although we have referred to the Supreme Court's decision in *Lopez–Mendoza* in several published decisions, *see, e.g., United States v. Lopez,* 445 F.3d 90, 99 (2d Cir.2006); *Johnson v. Ashcroft,* 378 F.3d 164, 172 n. 10 (2d Cir.2004); *Montero v. INS,* 124 F.3d 381, 386 (2d Cir.1997), we have not, to date, had an occasion to apply *Lopez–Mendoza* explicitly. The issue squarely presents itself in this case, and we now apply it as the law of the circuit.

■ In so doing, we pause to emphasize principles—all significant to the case before us—which clarify when an egregious violation would properly lead to the suppression of evidence in a civil proceeding. At the outset, it should be made clear that *Lopez–Mendoza* authorizes exclusion for violations that are egregious *either* because the violation "transgress[ed] notions of fundamental fairness," *or* because the violation "undermine[d] the probative value of the evidence obtained." *Lopez–Mendoza,* 468 U.S. at 1050–51, 104 S.Ct. 3479. The Court, seemingly inadvertently, used the conjunctive "and" instead of the disjunctive "or" to link these two possible grounds for deeming a violation egregious. As a result, it could be read as saying that proof of both prongs—*i.e.,* evidence of fundamental unfairness *and* diminished probative value—was needed to justify exclusion. *See id.*

This, however, is plainly not what the Court intended. For, as the Ninth Circuit observed in *Gonzalez–Rivera v. INS,* 22 F.3d 1441 (9th Cir.1994), the *Lopez–Mendoza* Court justified its exception for egregious constitutional violations with examples in which evidence was suppressed solely on the basis of unfairness, that is, where the reliability of the evidence was in no way tarnished by the putative violation. *See Gonzalez–Rivera,* 22 F.3d at 1451 ("[A] fundamentally unfair Fourth Amend-

ment violation is considered egregious regardless of the probative value of the evidence obtained [under *Lopez–Mendoza* ]"). For example, in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the evidence at issue—pills forcibly removed from a defendant's stomach that were later used to establish possession— was indisputably reliable. The pills were nonetheless suppressed because of the objectionable method used by the police to obtain them. *See id.* at 172–74, 72 S.Ct. 205. Indeed, *Rochin* stated in no uncertain terms that reliability cannot be the sole touchstone of the Fourth Amendment. *See id.* at 173, 72 S.Ct. 205 (noting that coerced confessions are inadmissible in criminal trials "even though statements contained in them may be independently established as true" principally because they "offend the community's sense of fair play and decency"). Similarly, the BIA decisions cited by the Court in *Lopez–Mendoza* did not focus on the reliability of the evidence. They concentrated, instead, on whether the admission of the contested evidence would be fundamentally fair. And, on that basis alone, the issue of suppression was decided. *See, e.g., In re Garcia,* 17 I. & N. Dec. 319, 320–21 (BIA 1980) (excluding statements obtained after agents repeatedly ignored detainee's request for counsel); *In re Toro,* 17 I. & N. Dec. 340, 344 (BIA 1980) (admitting evidence on the ground that the suspicionless stop was made in good faith because its legality was unclear at the time it was made).

■ Thus, exclusion of evidence is appropriate under the rule of *Lopez–Mendo-*

za if record evidence established either (a) that an egregious violation that was fundamentally unfair had occurred, or (b) that the violation—regardless of its egregiousness or unfairness—undermined the reliability of the evidence in dispute. Nothing before us raises doubts about the veracity of the evidence obtained as a result of the seizure. Indeed, Almeida–Amaral's mother submitted an affidavit confirming that petitioner was a native and citizen of Brazil. Hence, there is no merit to the contention that the evidence obtained as a result of the border agent's action should be excluded because the putative wrongfulness of that action undermined the probative value of the evidence. Suppression is not warranted on this ground.

■ This leaves the question of whether the agent's stop of Almeida–Amaral "transgress[ed] notions of fundamental fairness." In this respect, there are two principles that—under the circumstances of this case—bear on whether petitioner suffered an egregious violation of his constitutional rights.[1] First, the egregiousness of a constitutional violation cannot be gauged solely on the basis of the validity (or invalidity) of the stop, but must also be based on the characteristics and severity of the offending conduct. Thus, if an individual is subjected to a seizure for *no* reason at all, that by itself may constitute an egregious violation, but only if the seizure is sufficiently severe. Second, even where the seizure is not especially severe, it may nevertheless qualify as an egregious violation if the stop was based on race (or some other grossly improper consideration).[2]

---

**1.** In noting principles that shed light on when a seizure may be deemed egregious within the meaning of *Lopez–Mendoza,* we do not intend to give an exhaustive list of what might constitute an egregious violation of an individual's rights. We emphasize these principles only because they are especially germane to

the facts and circumstances of the case before us.

**2.** The government seeks to insulate the arresting agent's actions from both of these principles by arguing that there was no seizure under the Fourth Amendment since the officer only requested identification from Almei-

This second basis for possibly finding a seizure unconstitutionally egregious accords with the view taken by the Ninth Circuit in *Gonzalez–Rivera*, a. case in which a deportee had been pulled over by a roving border patrol agent and asked for identification. 22 F.3d at 1443. The agent there testified that he had stopped the deportee because he had not looked over at the patrol car, because he was blinking more than is normal, because his mouth appeared to be "dry," *and because the deportee was Hispanic. Id.* at 1446. The Ninth Circuit found that the first three reasons did not provide articulable suspicion sufficient to justify the agent's actions, and therefore that the deportee's arrest was a violation of the Fourth Amendment. *Id.* at 1446–47; *see also United States v. Brignoni–Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (permitting roving patrol agents to stop vehicles "only if they are aware of specific articulable facts, together with rational inferences from these facts, that reasonably warrant suspicion that the vehicles contain aliens who may be illegally in the country"). In addition, citing the IJ's finding that the arresting agent had, in fact, relied solely on race to pull over the deportee's car, the court applied *Lopez–Mendoza* and concluded—like the IJ who had been reversed by the BIA—that the stop was an "egregious constitutional violation requiring suppression of the evidence ob-

tained as a result of the stop." *Gonzalez–Rivera,* 22 F.3d at 1442–43.

The appeal before us resembles *Gonzalez–Rivera* insofar as the arresting agent in our case also had no valid reason or suspicion to justify his stop. The government stressed that Almeida–Amaral had been walking into the gas station parking lot at 2:11 a.m. with two other individuals. He was, the record states, either 35 or 85 miles from the Mexican border when he was questioned. These facts, like those asserted by the police in *Gonzalez–Rivera,* do not supply an articulable suspicion. This suspicionless stop—assuming still, for the reasons given in note 3, that it was "a stop"—was, therefore, an infringement of petitioner's Fourth Amendment rights. *Cf. Brignoni–Ponce,* 422 U.S. at 884, 95 S.Ct. 2574.

But, *Lopez–Mendoza* requires more than a violation to justify exclusion. It demands "egregiousness." And, applying our first principle, we believe that while the lack of any valid basis whatsoever for a seizure sets the stage for egregiousness, more is needed. Thus, exclusion may well be proper where the seizure itself is gross or unreasonable in addition to being without a plausible legal ground, *e.g.,* when the initial illegal stop is particularly lengthy, there is a show or use of force, etc.

We have found nothing in the record of the instant case to support any such find-

---

da–Amaral. Petitioner asserts, however, that before he was asked for identification, the agent stepped out of his truck and yelled at him to stop. Because there has been no fact finding in this case, for the purposes of this appeal, we are bound to accept petitioner's statements as true. And, while a simple request for identification may not, without more, constitute a seizure, *see Hiibel v. Sixth Judicial Dist. Court of Nev.,* 542 U.S. 177, 185, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004), a yelled command from a border agent might well not make "a reasonable person ... feel free to decline the officer['s] request[ ] or oth-

erwise terminate the encounter." *United States v. Drayton,* 536 U.S. 194, 202, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). Because there is a constitutional difference between approaching an individual to pose a question and shouting stop, we conclude—as far as this stage of the proceeding is concerned—that Almeida–Amaral was seized for the purposes of his Fourth Amendment challenge. *Cf. California v. Hodari D.,* 499 U.S. 621, 627, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); *Brown v. City of Oneonta,* 221 F.3d 329, 340 (2d Cir. 2000).

ing. In fact, had the agent not yelled stop to Almeida–Amaral, the officer's act of asking petitioner for identification would probably not have been a seizure at all. Under these circumstances, we conclude that the suspicionless seizure, albeit invalid, was not sufficiently severe to be deemed egregious under *Lopez–Mendoza.*

Even so, our second principle means that, were there evidence that the stop was based on race, the violation would be egregious, and the exclusionary rule would apply. That is the holding of *Gonzalez–Rivera.* *Cf. United States v. Swindle,* 407 F.3d 562, 569–70 (2d Cir.2005) (noting that race cannot create reasonable suspicion for a stop). But, unlike *Gonzalez–Rivera,* Almeida–Amaral offers nothing other than his own intuition to show that race played a part in the arresting agent's decision. Almeida–Amaral asserts, in an affidavit, that the agent stopped him because of his race. But he alleges no facts adequate to support that belief. And so, even taking the evidence most favorably to petitioner (as, at this stage, we must), we find the basic premise of *Gonzalez–Rivera* to be missing. Because of the absence of evidence that the stop was race-based, we conclude that Almeida–Amaral has not established that the Fourth Amendment violation was an egregious one.

Accordingly, we conclude that the BIA did not err in denying petitioner's motion to suppress evidence of Almeida–Amaral's deportability.

### B. Unaccompanied Minor

■ Petitioner's contention that the IJ and BIA could not rely on the contents of his I–213 form because it was derived from statements taken from an unaccompanied minor is also without merit. Although aliens under 18 are designated "juveniles"

and recognized as minors, *see, e.g.,* 8 C.F.R. § 1236.3; 8 C.F.R. § 274a.2; 8 C.F.R. § 103.7, the law to which both parties cite states that I–213 forms can be disqualified only if the unaccompanied minor is under the age of *16.* 8 C.F.R. § 1240.48(b);[3] *see Davila–Bardales v. INS,* 27 F.3d 1, 3 (1st Cir.1994) ("An INS regulation says that 'an IJ shall not accept an admission of deportability from an unrepresented respondent who is ... under age *16* years old and is not accompanied by a guardian, relative or friend.'" (emphasis added)); *In re Amaya,* 21 I. & N. Dec. 583, 586 (BIA 1996) ("In the case of an unaccompanied and unrepresented minor under the age of *16* years, however, 8 C.F.R. § 242.16(b) requires that an Immigration Judge may not accept such a minor's admission to a[ ] charge of deportability because the minor is presumed to be incapable of determining whether a charge applies to him." (emphasis added)).

Because petitioner was 17 years old at the time he was arrested, it was not improper under INS regulations to consider the statement, particularly because the veracity of the relevant facts was corroborated by his passport and an untraversed affidavit from petitioner's mother. *Cf. In re Gomez–Gomez,* 23 I. & N. Dec. 522, 530 (BIA 2002) ("[I]n the absence of reason to doubt the reliability of the information contained in the Form I–213, that document is presumed to be accurate and can constitute clear, unequivocal, and convincing evidence of deportability, *even* in a case involving an unrepresented minor respondent under the age of 16.") (citing *In re Ponce–Hernandez,* 22 I. & N. Dec. 784 (BIA 1999)).

We have considered all of petitioner's arguments and find them to be without

**3.** This regulation was originally designated 8 C.F.R. § 242.16(b). In 1997 it was redesignated 8 C.F.R § 240.48, and then in 2003 it received its current designation, 8 C.F.R. 1240.48(b).

merit. The petition for review is therefore DENIED.