**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-2264

_____

APOLONIO AGUILAR-HERNANDEZ
a.k.a. Hernad Aguikar-Adoloneo,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A200-864-320)
Immigration Judge:  Honorable Mirlande Tadal

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 6, 2013

Before: CHAGARES, GARTH and SCIRICA, Circuit Judges

(Opinion filed:  November 8, 2013)

_____

OPINION

_____

PER CURIAM

        Apolonio Aguilar-Hernandez ("Aguilar") petitions for review of a final order of

removal issued by the Board of Immigration Appeals (BIA).  For the reasons set out

below, we will deny the petition for review.

Aguilar is a citizen of Mexico. He arrived in the United States in 2005 without being admitted. On September 26, 2010, local police in New Jersey arrested Aguilar for driving under the influence of alcohol. The arresting officer, Sergeant Fahr, then called Immigration and Customs Enforcement (ICE), and informed them that he had Aguilar in custody. As a result, ICE issued a detainer on September 26, 2010, and interviewed Aguilar in prison (where he was being held by local law enforcement) on October 4, 2010. During the interview, Aguilar acknowledged that he was a Mexican citizen and that he did not have permission to reside in the United States. The next day, the Department of Homeland Security (DHS) issued a notice to appear charging Aguilar with being removable under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted.

Before an Immigration Judge (IJ), Aguilar sought to suppress the statements he made to ICE. He claimed that Sergeant Fahr's call to ICE was the result of impermissible racial profiling, and that his statement should be excluded as the fruit of the poisonous tree. He also claimed that ICE detained him for longer than the relevant regulation, 8 C.F.R. § 287.7, allows. The IJ rejected Aguilar's arguments and ordered him removed. Aguilar then appealed to the BIA. He reiterated the arguments that he raised before the IJ, and also contended that the IJ had violated his due process rights by conducting just a single hearing to evaluate his motion to suppress and to determine whether he was removable. The BIA dismissed Aguilar's appeal, and Aguilar filed a

2

timely petition for review to this Court.

We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Where, as here, the BIA agrees with the decision and analysis of the IJ while adding its own reasoning, we review both decisions. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir.2009) We review the agency's factual findings for substantial evidence and treat them as "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. at 251 (quoting 8 U.S.C. § 1252(b)(4)(B)). We review legal conclusions de novo. Id.

Aguilar's primary argument is that Sergeant Fahr, in violation of his Fourth Amendment rights, called ICE (and thus set the immigration-enforcement machinery in motion) solely because of his race. Therefore, Aguilar continues, based on the exclusionary rule, his subsequent statements to ICE officials should be suppressed.

Even assuming that Sergeant Fahr's call to ICE implicates the Fourth Amendment (which is by no means clear, see generally Estrada v. Rhode Island, 594 F.3d 56, 63-64 (1st Cir. 2010)), the BIA did not err in concluding that Aguilar was not entitled to suppress his statements to ICE. In removal proceedings, the exclusionary rule applies only "in cases where constitutional violations by immigration officers are 'widespread' or evidence has been obtained as a result of 'egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained.'" Oliva-Ramos v. Att'y Gen., 694 F.3d 259, 272 (3d Cir. 2012) (quoting I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1050-51 (1984)).

3

Aguilar, as the party challenging the legality of the evidence, bears the burden of making a prima facie case of illegality. See id. at 273. However, he has provided nothing beyond his own speculation to establish that Sergeant Fahr's conduct was race-based.[1] This is not sufficient to establish an egregious violation, see Almeida-Amaral v. Gonzales, 461 F.3d 231, 237 (2d Cir. 2006), and the BIA therefore did not err in rejecting this claim.

Substantial evidence likewise supports the BIA's conclusion that ICE did not detain Aguilar for longer than permitted by 8 C.F.R. § 287.7. Under § 287.7(d), "[u]pon a determination by [DHS] to issue a detainer for an alien not otherwise detained by a criminal justice agency, such agency shall maintain custody of the alien for a period not to exceed 48 hours . . . to permit assumption of custody by [DHS]." Here, Aguilar was in jail for a total of more than 48 hours. Nevertheless (and even assuming, for purposes of this case, that the exclusionary rule can apply to a violation of § 287.7), § 287.7(d) does not purport to limit the time that local law enforcement may detain an alien for violating state criminal laws. Here, it was reasonable for the BIA to conclude that local law enforcement detained Aguilar for its own purposes — that is, not based on the immigration detainer — until October 6, 2010, at which time it released him into DHS custody. See generally Oliva-Ramos, 694 F.3d at 273 (initial burden is on the party

_____

[1] In fact, the undisputed evidence establishes that Fahr called ICE after Aguilar could produce no identification whatsoever; further, Aguilar testified that Fahr might have understood Aguilar, who apparently speaks English with a heavy accent, to have stated that he had come from Mexico. Cf. Martinez Carcamo v. Holder, 713 F.3d 916, 923 (8th

4

challenging evidence).  Aguilar has provided us with no basis to disturb the BIA's

assessment of these events, and his claim therefore fails.[2]

Finally, Aguilar argues that his due process rights were violated because, rather

than holding two separate hearings, the IJ took evidence on both his suppression motion

and the underlying removability charge in one hearing.  Aguilar premises this argument

on Simmons v. United States, 390 U.S. 377, 394 (1968), where the Supreme Court held

that, "when a defendant testifies in support of a motion to suppress evidence on Fourth

Amendment grounds, his testimony may not thereafter be admitted against him at trial on

the issue of guilt unless he makes no objection."

This claim lacks merit.  The concern that animated Simmons — that because of

standing rules, to bring a Fourth Amendment claim a defendant may have to assert

ownership of contraband, which could be fatal to any defense in the underlying action —

is not present here, where Aguilar was not required, for either legal or strategic reasons,

to answer the government's questions concerning removability.  In any event, even

assuming that the IJ erred in combining the hearings in this way, we discern no error in

the BIA's conclusion that Aguilar was not prejudiced.  See, e.g., Delgado–Sobalvarro v.

---

Cir. 2013) (suggesting that lack of identification can provide reasonable suspicion).

[2] To the extent that Aguilar also intends to argue that local law enforcement's decision to detain him during this period violated his constitutional rights, he has again failed to carry his burden.  See Oliva-Ramos, 694 F.3d at 273.  Aguilar has presented no evidence whatsoever on this issue, and he thus cannot establish that the detention infringed his constitutional rights.  Finally, while Aguilar suggests that it was inappropriate for ICE to interview him in prison, "the fact of custody alone has never been enough in itself to demonstrate a coerced confession."  United States v. Watson, 423 U.S. 411, 424 (1976).

Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010) ("To establish a violation of due process, the petitioner[ ] must show that substantial prejudice resulted from the alleged procedural errors."). As the BIA explained, even putting aside Aguilar's hearing testimony, the evidence in the record (most notably, the Form I-213), was unquestionably sufficient to establish his removability. See Gutierrez-Berdin v. Holder, 618 F.3d 647, 656-57 (7th Cir. 2010). Thus, any error here could not have caused substantial prejudice. See United v. Hollingsworth, 495 F.3d 795, 805-06 (7th Cir. 2007) (holding violation of Simmons rule harmless where improperly admitted evidence was duplicative).[3]

Accordingly, we will deny Aguilar's petition for review.

---

[3] To the extent that Aguilar argues that his due process claim can succeed without a showing of prejudice, we reject his argument. While we have held that "violations of regulations promulgated to protect fundamental statutory or constitutional rights need not be accompanied by a showing of prejudice to warrant judicial relief," Leslie v. Att'y Gen., 611 F.3d 171, 178 (3d Cir. 2010), Aguilar has not identified any regulation that the IJ violated here.