**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2374
_____

LUCIO ARRIAGA-HERNANDEZ,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA,
Respondent
_____

ON PETITION FOR REVIEW FROM REINSTATEMENT
OF A PRIOR ORDER OF REMOVAL
(Agency No. A098-007-534)
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 13, 2017
_____

Before: McKEE, AMBRO, and ROTH, *Circuit Judges*.

(Filed: November 14, 2017)

_____

OPINION[*]
_____


McKEE, *Circuit Judge.*

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Petitioner Lucio Arriaga Hernandez petitions for review of the reinstatement of his deportation order. He argues that his arrest violated the Fourth Amendment and his removal proceedings violated due process. For the reasons that follow, we will deny his petition for review.

I.

Hernandez is a citizen of Mexico who until recently was residing in Harrisburg, Pennsylvania. On May 2, 2016, Hernandez parked in the small parking lot of a convenience store. He intended to wire money from the store. As Hernandez got out of his car and began walking towards the store, he saw Department of Homeland Security agents approaching him. According to DHS, the agents had been looking for another person who lived in the same building as the convenience store.

The DHS report states that, when the agents saw Hernandez, they "became suspicious of the individual" because "they were unable to identify the individual."[1] As the agents approached, Hernandez turned and walked back to his car, got in, and began backing out of the parking lot. However, the agents "were able to stop" Hernandez and prevent him from leaving.[2] When asked for identification, Hernandez said he was a Mexican citizen so he didn't have identification.

While Hernandez was detained, DHS learned his identity and that he was subject to a 2013 order of removal. Accordingly, DHS initiated procedures for reinstatement of

_____

[1] App. II at 7.
[2] App. II at 7.

that order. Hernandez was removed from the country on or about May 13, 2016, but his petition for review of his removal followed.

II.[3]

Hernandez argues that the statement he made to DHS agents about his identity should have been suppressed because it was obtained while he was detained and not free to leave. His detention, he argues, constituted an arrest without probable cause or even the reasonable suspicion required for a *Terry*[4] stop. Hernandez concedes that ordinarily when an illegal arrest leads only to the disclosure of identity, the identity cannot be suppressed.[5] However, Hernandez argues that because "the only reason DHS had to stop [him] was based on racial or ethnic profiling," this stop was an "egregious" violation of the Fourth Amendment and therefore the "identity rule" does not apply.[6]

Assuming that agents violated Hernandez's Fourth Amendment rights during the stop in the parking lot, we hold that on this record, the violation was not an egregious one.

---

[3] This Court has jurisdiction to review constitutional or legal questions raised pertaining to the reinstatement order. *See* 8 U.S.C. § 1252(a)(2)(D); *Verde-Rodriguez v. Att'y Gen.*, 734 F.3d 198, 202 (3d Cir. 2013).

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

[5] *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred.").

[6] *See Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 275 (3d Cir. 2012) ("[T]he exclusionary rule may apply in removal proceedings where an alien shows 'egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained.'" (quoting *Lopez-Mendoza*, 468 U.S. at 1051)).

3

As we articulated in *Olivia-Ramos*, whether a violation is "egregious," such that evidence of an individual's identity may be suppressed, depends on the "totality of the circumstances" of the stop, including:

> [W]hether [the petitioner] can establish intentional violations of the Fourth Amendment, whether the seizure itself was so gross or unreasonable in addition to being without a plausible legal ground, (e.g., when the initial illegal stop is particularly lengthy, there is an unnecessary and menacing show or use of force, etc.), whether improper seizures, illegal entry of homes, or arrests occurred under threats, coercion or physical abuse, the extent to which the agents reported to unreasonable shows of force, and finally, whether any seizures or arrests were based on race or perceived ethnicity.[7]

In *Olivia-Ramos*, we also adopted the reasoning of the Court of Appeals for the Second Circuit in *Almeida-Amaral v. Gonzales*.[8] That decision noted that, "even where the seizure is not especially severe, it may nevertheless qualify as an egregious violation if the stop was based on race."[9] However, in that case the Second Circuit ultimately concluded that the border patrol agent's stop of a seventeen-year-old boy walking into a gas station parking lot was not egregious even though "the arresting agent . . . had no valid reason or suspicion to justify his stop."[10]

Here, by contrast, the agents did have reason to suspect Hernandez. When Hernandez spotted the agents, he changed course and walked back to his car instead of

---

[7] *Id.* at 279. An egregious violation may also be shown where the violation "undermined the reliability of the evidence in dispute." *Id.* at 278. Here, however, nothing before us raises doubts about the veracity of the evidence obtained as a result of Hernandez's stop.

[8] *Id.* at 278 (citing *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 235 (2d Cir. 2006).

[9] *Almeida-Amaral*, 461 F.3d at 235.

[10] *Id.* at 236.

continuing towards the grocery store.[11] Only after Hernandez turned around and got in his car to leave did the officers prevent him from leaving the parking lot. Furthermore, this case presents no other indications of egregiousness as outlined in *Olivia-Ramos*: There is no evidence that the stop was particularly lengthy, coercive, or threatening. The agents who stopped Hernandez did not use force against him, nor did they intrude on private property.[12] Based on the record before us, we cannot conclude that that Hernandez was stopped solely because of his apparent ethnicity or national origin. Although it is certainly conceivable that Hernandez would not have been stopped if his features did not suggest his national origin, there is scant (if any) evidence in the record to support that conclusion.[13]  Accordingly, we cannot conclude that Hernandez's stop was egregious. As a result, even if his stop violated the Fourth Amendment, the evidence of his identity may not be suppressed.

Hernandez also argues that the reinstatement procedures violate his due process rights because he was unable to assert possible defenses to removal such as eligibility for DACA or VAWA protections. However, as the petitioner notes in his brief, in *Ponta-Garcia v. Attorney General of the United States*,[14] we held that reinstatement of removal

---

[11] *See Cervantes-Cuevas v. I.N.S.*, 797 F.2d 707, 709–10 (9th Cir. 1985) (finding a basis for reasonable suspicion when agents knew undocumented individuals were fleeing an area and the petitioner slowed down, then sped up, upon seeing the Border Patrol car).
[12] *See Olivia-Ramos*, 694 F.3d at 279 (noting that "inva[sion] of private property" and "illegal entry of homes" factor into whether or not a seizure is an egregious one).
[13] *See Almeida-Amaral*, 461 F.3d at 237 ("[The petitioner] offers nothing other than his own intuition to show that race played a part in the arresting agent's decision.").
[14] 557 F.3d 158 (3d Cir. 2009).

procedures do not violate due process guarantees.[15]  Therefore, we are constrained by

precedent, and cannot review his reinstatement order on due process grounds.[16]

III.

For the reasons set forth above, we deny the petition to review the order of

reinstatement.

---

[15] *Id.* at 163.

[16] This court may review whether the removal order was properly reinstated. *See id.* at
165 (remanding a reinstatement order because the petitioner may not have reentered
illegally and the original removal order may have been invalidated). However, Hernandez
does not dispute the factual underpinnings that made reinstatement appropriate here.