Ortiz-Diaz v. Whitaker

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of January, two thousand nineteen.

PRESENT:    ROSEMARY S. POOLER,
            REENA RAGGI,
            DEBRA ANN LIVINGSTON,
                 *Circuit Judges.*

_____

JUVENTINO MIGUEL ORTIZ-DIAZ,

                 *Petitioner*,

            v.                                                              17-2323

MATTHEW WHITAKER,[1] ACTING UNITED
STATES ATTORNEY GENERAL,

                 *Respondent*.

_____

Appearing for Petitioner:    Glenn Formica (Elyssa N. Williams, *on the brief*), Formica
                             Williams, P.C., New Haven, CT.

Appearing for Respondent:    Andrew C. MacLachlan (Chad A. Readler, Acting Assistant
                             Attorney General; Jesi J. Carlson, Senior Litigation Counsel,
                             Andrew C. MacLachlan, Senior Litigation Counsel, Office of

---

[1] Matthew Whitaker, Acting United States Attorney General, is automatically substituted for former Attorney General Jefferson B. Sessions III per Federal Rule of Appellate Procedure 43(c)(2). The Clerk of Court is directed to amend the caption accordingly.

Immigration Litigation, *on the brief*), United States Department of Justice, Washington, DC.

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that this petition for review of a decision of the Board of Immigration Appeals ("BIA") be and it hereby is **DENIED in part** and **DISMISSED in part**.

Petitioner Juventino Miguel Ortiz-Diaz seeks review of a Board of Immigration Appeals ("BIA") decision affirming the decision of an Immigration Judge ("IJ") denying his motion to suppress evidence and terminate proceedings, denying cancellation of removal, and ordering his removal to Guatemala. *In re Juventino Miguel Ortiz-Diaz*, No. A077 547 948 (B.I.A. June 30, 2017), *aff'g* No. A077 547 948 (Immigration Ct. Hartford Mar. 1, 2017). We assume the parties' familiarity with the underlying facts, issues, and procedural history.

Under the circumstances of this case, we have reviewed the decision of the IJ as modified by the BIA—i.e., minus the IJ's denial of cancellation of removal as a matter of discretion, which the BIA elected not to reach. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). The only issues before us are the agency's denial of (1) Ortiz-Diaz's motion to suppress evidence of his alienage and terminate proceedings and (2) his application for cancellation of removal based on his failure to demonstrate the requisite hardship to a qualifying relative.

## I. Motion to Suppress

We review factual findings for substantial evidence and questions of law de novo. 8 U.S.C. § 1252(b)(4)(B); *Cotzojay v. Holder*, 725 F.3d 172, 177 n.5 (2d Cir. 2013). We find no error in the agency's denial of Ortiz-Diaz's motion to suppress evidence of his alienage.

Suppressing evidence in removal proceedings is warranted "if record evidence establishe[s] either (a) that an egregious violation that was fundamentally unfair ha[s] occurred, or (b) that the violation—regardless of its egregiousness or unfairness—undermine[s] the reliability of the evidence in dispute." *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 235 (2d Cir. 2006). A constitutional violation may be egregious "if an individual is subjected to a seizure for *no* reason at all . . . but only if the seizure is sufficiently severe." *Id.* "[E]ven where the seizure is not especially severe, it may nevertheless qualify as an egregious violation if the stop was based on race (or some other grossly improper consideration)." *Id.*

We have approved the agency's burden-shifting framework for adjudicating suppression motions:

> [I]f the petitioner offers an affidavit that could support a basis for excluding the evidence in . . . question, it must then be supported by testimony. If the petitioner establishes a *prima facie* case, the burden of proof shifts to the Government to show why the evidence in question should be admitted.

*Cotzojay*, 725 F.3d at 178 (citation omitted) (internal quotation marks omitted). "An affidavit

cannot support a basis for exclusion unless, if taken as true, it makes out an egregious constitutional violation." *Maldonado v. Holder*, 763 F.3d 155, 160 (2d Cir. 2014).

Ortiz-Diaz argues that evidence of his alienage was illegally obtained and should be suppressed. However, the agency determination that Ortiz-Diaz did not make out a prima facie case for suppression because his supporting affidavit does not, taken as true, make out an egregious constitutional violation is supported by the record. Ortiz-Diaz's claim arises from his legal arrest in 2012 for driving under the influence. During that arrest, Ortiz-Diaz provided police with an expired driver's license, and he does not remember whether he provided them any other identification. After Ortiz-Diaz pled guilty to driving under the influence, immigration officials interrogated him about his alienage; Ortiz-Diaz now contests this interrogation. This challenge, however, must fail: Federal regulations permit immigration officials to interrogate persons who are reasonably suspected—based on specific, articulable facts—to be unlawfully present in the United States. 8 C.F.R. § 287.8(b)(2). Ortiz-Diaz also argues that the immigration officials' questioning violated principles of due process because the officials failed to inform him of his purported right to consult an attorney or Guatemalan consular officers before being questioned. But these rights become available only when a person is detained pursuant to removal proceedings, and Ortiz-Diaz was not detained pursuant to removal proceedings in 2012. *See id.* § 236.1(e) (providing, in section regarding detention of aliens prior to order of removal, that detainees from certain countries have the privilege of communication with consular officers); *id.* § 287.3(c) (requiring "alien arrested without warrant and placed in formal proceedings . . . be advised of . . . the right to be represented").

Similarly, after Ortiz-Diaz's second arrest for driving under the influence in 2016, immigration officials were permitted to interrogate and arrest him for violating the conditions of his 2012 immigration bond release. *See* 8 U.S.C. § 1226(b) ("The Attorney General at any time may revoke a bond . . . , rearrest the alien under the original warrant, and detain the alien."); 8 C.F.R. § 287.5(a) (providing immigration officers the authority "to interrogate, without warrant, any alien or person believed to be an alien concerning his . . . right to be, or to remain, in the United States"). Ortiz-Diaz also alleges that immigration officials exerted undue pressure on him to sign a certificate of service of his 2016 notice to appear in order to be permitted to go before a judge. But even assuming officials coerced Ortiz-Diaz to sign the certificate of service of his 2016 notice to appear, in signing that certificate, Ortiz-Diaz merely acknowledged service of the notice, oral notice, and receipt of a list of attorneys; he did not thereby admit his alienage or any other facts relevant to the suppression issue.

Despite his arguments that he was the victim of racial profiling, Ortiz-Diaz's affidavit does not mention race or ethnicity or reveal any words or actions by police or immigration officials from which to infer that the agents racially profiled Ortiz-Diaz in interrogating or arresting him. *See Almeida-Amaral*, 461 F.3d at 237 (concluding that an unconstitutional stop was not egregious so as to warrant suppression when the movant "offer[ed] nothing other than his own intuition to show that race played a part in the arresting agent's decision").

3

Lastly, we register no disagreement with the agency's conclusion that even without the challenged sources, the agency had independent evidence of Ortiz-Diaz's alienage prior to his 2012 arrest due to his 1999 applications for temporary protected status and employment authorization, in which Ortiz-Diaz attested that he was a national and citizen of Guatemala. Ortiz-Diaz has identified no viable basis upon which to suppress these applications.

Accordingly, because Ortiz-Diaz failed to provide sufficient facts in his affidavit to state a claim that immigration officials committed an egregious constitutional violation or that the reliability of the evidence of his alienage was somehow undermined, the agency did not err in denying his motion to suppress without an evidentiary hearing. *See id.* at 235; *Maldonado*, 763 F.3d at 160-62.

## II. Cancellation of Removal

The Attorney General may cancel the removal of an alien who entered without inspection, like Ortiz-Diaz, if the alien:

> (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application; (B) has been a person of good moral character during such period; (C) has not been convicted of [certain] offense[s] . . . ; and (D) establishes that removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). Our jurisdiction to review the agency's denial of cancellation of removal based on an applicant's failure to satisfy the hardship requirement is limited to colorable constitutional claims and questions of law. *Id.* § 1252(a)(2)(B), (D); *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39-40 (2d Cir. 2008). We review such constitutional claims and questions of law de novo. *Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009). When assessing our jurisdiction in this area, we "study the arguments asserted . . . to determine, regardless of the rhetoric employed in the petition, whether it merely quarrels over the correctness of the factual findings or justification for the discretionary choices." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 329 (2d Cir. 2006).

Ortiz-Diaz argues that the IJ erred by miscalculating the hardship his family would face if he were removed to Guatemala, particularly with respect to evidence that his eldest daughter would have difficulty receiving treatment for her acid reflux in Guatemala and that his younger daughter suffers hallucinations and night terrors. Although the agency may commit an error of law if it ignores or seriously mischaracterizes material facts, *see Mendez v. Holder*, 566 F.3d 316, 323 (2d Cir. 2009), Ortiz-Diaz cannot demonstrate such error here because the agency considered all the evidence related to his children's medical conditions before concluding that the record did not establish that the conditions were serious or could not be treated in Guatemala. Accordingly, Ortiz-Diaz merely quarrels with the IJ's discretionary decision, which we are without jurisdiction to review. *See* 8 U.S.C. § 1252(a)(2)(B); *Xiao Ji Chen*, 471 F.3d at 329-30.

4

For the foregoing reasons, Ortiz-Diaz's petition for review is DENIED in part and DISMISSED in part.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court