*Millan-Hernandez v. Barr*

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2019

(Argued: January 6, 2020 Decided: July 13, 2020)

Docket No. 18-2107

---

MARIA CARED MILLAN-HERNANDEZ,

*Petitioner,*

–v.–

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,

*Respondent.*

---

B e f o r e :

KEARSE, CARNEY, and BIANCO, *Circuit Judges.*

---

Maria Cared Millan-Hernandez petitions for review of a 2018 Board of Immigration Appeals decision dismissing her appeal of an Immigration Judge's denial, without an evidentiary hearing, of her motion to suppress evidence. On appeal, we consider whether Millan-Hernandez provided sufficient evidence of an egregious Fourth Amendment violation to warrant an evidentiary hearing. We conclude that she did and that the agency applied an incorrect standard in determining otherwise. Accordingly, the petition for review is GRANTED and the cause REMANDED for further proceedings consistent with this Opinion.

GRANTED AND REMANDED.

—————————

AADHITHI PADMANABHAN, The Legal Aid Society, New York, NY (Nicholas J. Phillips, Joseph Moravec, Prisoners' Legal Services of New York, Buffalo, NY, *on the brief*), *for Petitioner*.

COLETTE J. WINSTON, Trial Attorney (Joseph H. Hunt, Assistant Attorney General; Jeffery R. Leist, Senior Litigation Counsel, *on the brief*), *for* the Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

—————————

PER CURIAM:

Maria Cared Millan-Hernandez ("Millan-Hernandez") petitions for review of a 2018 Board of Immigration Appeals ("BIA") decision dismissing the appeal of an Immigration Judge's ("IJ") denial, without an evidentiary hearing, of Millan-Hernandez's motion to suppress evidence of her alienage. *Matter of Maria Cared Millan-Hernandez*, No. A209 408 050 (Immig. Ct. Batavia, N.Y., Jan. 26, 2018), *dismissed*, (B.I.A. June 26, 2018).

A movant is entitled to suppression of evidence in removal proceedings when she establishes that an "egregious" and "fundamentally unfair" violation of her Fourth Amendment rights resulted in the production of that evidence. *Almeida-Amaral v. Gonzales*, 461 F.3d 231, 235 (2d Cir. 2006); *see also INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050-51 (1984) (plurality opinion). If the constitutional violation "was based on race (or some other grossly improper consideration)," it qualifies as "egregious." *Almeida-Amaral*, 461 F.3d at 235; *see also Zuniga-Perez v. Sessions*, 897 F.3d 114, 125 (2d Cir. 2018). If the documentary evidence that an applicant submits in support of her motion "*could*

2

support a basis for excluding the evidence," *Zuniga-Perez*, 897 F.3d at 125 (internal quotation marks omitted) (emphasis in original); *see also Cotzojay v. Holder*, 725 F.3d 172, 178 (2d Cir. 2013), then she is entitled to an evidentiary hearing at which she may attempt to establish a *prima facie* case for suppression and thereby shift the burden to the government to justify its actions.

We conclude that the agency erred by requiring that Millan-Hernandez rely on her documentary evidence alone and make a *prima facie* showing of an egregious Fourth Amendment violation before it would conduct a suppression hearing. We further conclude that, because Millan-Hernandez's sworn statements and the police incident report that she submitted "could support" suppression under the *Cotzojay* standard, she was entitled to a hearing. For these reasons, Millan-Hernandez's petition for review is GRANTED and the cause is REMANDED for further proceedings consistent with this Opinion.

## BACKGROUND

The following statement of facts is drawn from the Certified Administrative Record ("CAR") on appeal. For present purposes, we focus on three documents in that record: Millan-Hernandez's affidavit dated October 6, 2017, CAR at 316-17; the Albion (New York) Police Department Incident Report ("the Police Report") regarding the July 9, 2017 incident, CAR at 321-22; and the Form I-213 Record of Deportable/Inadmissible Alien that was prepared after Millan-Hernandez's detention, submitted to the IJ by the Department of Homeland Security with regard to Millan-Hernandez ("the Form I-213"), CAR at 343-46, and that served as the basis for her removal order. When examining the agency's decision to deny a suppression hearing, we accept as true factual statements made in the movant's affidavit. *See, e.g.*, *Maldonado v. Holder*, 763 F.3d 155, 160-62 (2d Cir. 2014).

3

Millan-Hernandez, a native and citizen of Mexico born in 1978, entered the United States without inspection in 1996, and resided primarily in Florida. Between 1 a.m. and 2 a.m. on July 9, 2017, while she and others were traveling by car from Florida to northern New York State in search of agricultural work, an officer from the Albion, New York police department stopped the car they were in after observing it swerve on the roadway.[1] In response to the officer's query, the car's driver advised that he had swerved to avoid a deer in the road and that he was sober. When the officer asked the driver for his identification, the driver presented a foreign passport. The officer then requested a driver's license, also saying to the driver, "You're not legal, right?" CAR at 316-17. After speaking on his radio, the officer proceeded to inquire of Millan-Hernandez and the other passengers in the car whether they had any "papers." *Id*. at 317.

Millan-Hernandez and the other passengers were unable to provide the officer with "papers," understanding the request as one for proof of legal status in the United States. *Id*. Directing the group then to wait, the officer summoned federal immigration authorities. At some time between 2:30 and 3:00 a.m., Customs and Border Protection ("CBP") agents arrived at the roadside where the officer who stopped the car and another officer in a second patrol car waited with the car's occupants.[2] The CBP agents "did not ask us any questions," according to Millan-Hernandez's sworn statement. *Id*. The agents proceeded to handcuff Millan-Hernandez and transported her and the other passengers to the Rochester Border Patrol Station, about forty miles away. They arrived at the Rochester Station at about 4 a.m. Following her arrest, Millan-Hernandez was

[1] The Police Report gives the time of the stop as 1:42 a.m. *See* CAR at 321.

[2] In her affidavit, Millan-Hernandez mistakenly identifies the officers as Immigration and Customs Enforcement ("ICE") officers. *See* CAR at 317.

detained in ICE facilities near the border, and the Department of Homeland Security ("DHS") initiated removal proceedings against her.

In subsequent proceedings before an IJ, counsel for Millan-Hernandez sought to suppress evidence of her alien status and in particular, of the Form I-213 that CBP had prepared and which contained an admission of her status. She argued that, even if the brief car stop was determined to be legal, she was detained on the highway unnecessarily "for almost two hours" after the stop's purpose was accomplished, *id.* at 317, and that the detention without probable cause violated the Fourth Amendment because the state officer had no grounds for suspecting her of criminal activity. Further, she urged that evidence of her alienage resulting from the stop must be suppressed because the unlawful detention was based on her race or ethnicity and was therefore an "egregious" wrong.

In October 2017, an IJ denied her suppression motion without conducting an evidentiary hearing. In an oral ruling issued in January 2018, a new IJ explained the prior decision as resting on the observation that Millan-Hernandez's supporting affidavit did not itself aver that the unlawful seizure was tainted by race; rather, the IJ stated that the argument was made by counsel in a brief and was "unfounded" and "unsupported by any facts." CAR at 86. This, the IJ reasoned, fell short of showing an "egregious" constitutional violation as required for suppression; thus, no hearing was required. The IJ also ruled against Millan-Hernandez on her application for cancellation of removal. Millan-Hernandez appealed to the BIA.

In June 2018, in a one-member decision, the BIA dismissed the appeal as to both suppression and cancellation of removal. As relevant here, the agency ruled that Millan-Hernandez failed to "make out a prima facie case for suppression because her affidavit does not mention race or ethnicity, or reveal any statements made by law enforcement

5

or immigration officials from which to infer that they used racial profiling in her detention." CAR at 4.

This timely appeal followed.

**DISCUSSION**

Millan-Hernandez challenges the agency's suppression decision on two grounds: she submits first, that the agency procedurally erred by requiring her to make a *prima facie* showing of an egregious violation based on documentary evidence alone and without an evidentiary hearing; and second, that the agency substantively erred in denying her a hearing since the evidence she provided "could support" her claim that her Fourth Amendment rights were violated when she was detained based on her race. *See Cotzojay*, 725 F.3d at 178 (internal quotation marks omitted).

"We review the agency's factual findings for substantial evidence, and questions of law *de novo*." *Id.* at 177 n.5 (citation omitted). Because the BIA's decision supplemented that of the IJ, we review the two decisions together. *See Pierre v. Holder*, 588 F.3d 767, 772 (2d Cir. 2009).

### I. The requisite threshold showing: when must the agency conduct an evidentiary hearing on a suppression motion?

Millan-Hernandez maintains that the agency applied an incorrect standard for determining whether she was entitled to an evidentiary hearing. We agree that the agency misconceived the threshold standard for such a hearing.

Suppression in removal proceedings may be warranted "if record evidence establishe[s] either (a) that an egregious violation that was fundamentally unfair ha[s] occurred, or (b) that the violation—regardless of its egregiousness or unfairness— undermine[s] the reliability of the evidence in dispute." *Almeida-Amaral*, 461 F.3d at 235;

6

*see also Lopez-Mendoza*, 468 U.S. at 1050-51 (plurality opinion). The evidence that may be suppressed includes evidence of alienage, such as statements reported in a Form I-213, that flowed from an egregious violation. *See Cotzojay*, 725 F.3d at 184.

The agency is to apply a burden-shifting procedure in adjudicating suppression motions: "[I]f the petitioner offers an affidavit that could support a basis for excluding the evidence in . . . question, it must then be supported by testimony. If the petitioner establishes a *prima facie* case, the burden of proof shifts to the [g]overnment to show why the evidence in question should be admitted." *Id.* at 178 (internal quotation marks and citation omitted). In determining whether the petitioner has made out a *prima facie* case and thus shifted the burden to the government, the agency must view the evidence and facts alleged "most favorably to petitioner." *Almeida-Amaral*, 461 F.3d at 237.

Over time, our decisions have refined the basic burden-shifting framework for evidentiary hearings. Thus, to warrant a hearing at which the movant may adduce testimony to make a *prima facie* showing, the movant's affidavit need only state facts that, "if true, *could* support a basis for excluding the evidence in question." *Cotzojay*, 725 F.3d at 178 (emphasis added) (internal quotation marks omitted). If the affidavit does so, then "the petitioner is entitled to an opportunity to confirm those allegations in an evidentiary hearing." *Zuniga-Perez*, 897 F.3d at 125 (internal quotation marks omitted). It is only once the affidavit has been considered and a hearing held that the applicant must have made a *prima facie* showing for the burden to shift to the government and suppression to be determined.

By requiring Millan-Hernandez to make out a *prima facie* case through her documentary evidence alone, the agency incorrectly applied the burden-shifting framework as it is refined in *Cotzojay*. Rather, it should have analyzed whether her documentary evidence "*could* support a basis for exclu[sion]," viewing the evidence in

the light most favorable to her. *Cotzojay*, 725 F.3d at 178 (emphasis added) (internal quotation marks omitted).[3]

We therefore proceed to apply the *Cotzojay* framework to the factual record presented here.

## II.    Applying the correct standard.

Applying the correct standard, we conclude that Millan-Hernandez submitted sufficient evidence to warrant a suppression hearing. As we articulated that standard in *Cotzojay* and repeated in *Zuniga-Perez*, her documentary evidence alone "could support a basis for exclu[sion]." *Zuniga-Perez*, 897 F.3d at 125 (emphasis omitted).

As observed above, a movant establishes a basis for suppression if she shows, first, that the challenged evidence was obtained through a Fourth Amendment violation, and second, that the Fourth Amendment violation was "egregious." *Almeida-Amaral*, 461 F.3d at 235. Here, we presume the legality of the initial traffic stop. But the two pieces of documentary evidence submitted by Millan-Hernandez—her affidavit and the Police Report—provide an ample potential basis for finding (1) that her Fourth Amendment rights were violated when the police officer detained her for approximately two hours after the stop, and (2) that the violation was egregious because it could well have been based on race or ethnicity.

Millan-Hernandez was no more than a passenger in the vehicle that was stopped for a possible traffic violation. As the Police Report reflects, even the driver was not

---

[3] We decided *Zuniga-Perez*, which we refer to here, after the BIA ruled in Millan-Hernandez's case. But *Zuniga-Perez* announced no new rule: the tolerant standard that we apply to trigger an initial evidentiary hearing was apparent in the *Cotzojay* ruling and has been the occasion for earlier remands to the agency for evidentiary hearings in similar circumstances. *See, e.g.*, *Cruz-Ramos v. Holder*, 567 Fed. App'x 11, 12-13 (2d Cir. 2014); *Santos v. Holder*, 486 Fed. App'x 918, 920 (2d Cir. 2012).

accused or suspected of a crime, he was subject to no alcohol-related examination, and he received no citation for the swerve. These facts raise significant questions about the legality of the prolonged detention of the driver and the passengers. *See generally Rodriguez v. United States*, 575 U.S. 348, 350 (2015) (holding that a passenger is seized in violation of the Fourth Amendment when a stop is prolonged beyond "the time needed to handle the matter for which the stop was made"). Although the timeline is inexact, the documents submitted by Millan-Hernandez leave little doubt that the July 2017 stop was extended beyond what was reasonably necessary to address and resolve the immediate traffic concern: The traffic inquiry lasted a matter of minutes; the occupants of the vehicle were then detained for approximately two hours as the local officer directed the group to await the arrival of CBP agents.[4]

Nor was there probable cause to believe that Millan-Hernandez committed a crime. According to the Police Report, the local officer contacted immigration officials during the stop "due to multiple individuals in the vehicle not having proper identification for being in the country." CAR at 322. The officer was detaining, he believed (perhaps correctly), "5 illegal immigrants." CAR at 321.[5] But, "[a]s a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012); *see also Zuniga-Perez*, 897 F.3d at 127. For that reason, "to delay the release of some detainees for no reason other than to

---

[4] The government argues unconvincingly that our decision in *Melnitsenko v. Mukasey*, 517 F.3d 42, 47 (2d Cir. 2008), in which we upheld the reasonableness of a three-hour stop by border patrol agents at a border patrol checkpoint, establishes that the two-hour prolongation in Millan-Hernandez's case was not unlawful. But stops at the border by federal agents are governed by different Fourth Amendment reasonableness standards than those made by state police based on mere traffic violations. *See, e.g.*, *United States v. Ramsey*, 431 U.S. 606, 616 (1977). *Melnitsenko* is inapposite here.

[5] One detained passenger in fact had legal status and, as the Police Report described, that person was transported elsewhere "to be picked up." CAR at 322.

verify their immigration status . . . raise[s] constitutional concerns." *Arizona v. United States*, 567 U.S. at 413. Moreover, the inquiry of the passengers regarding their immigration status had no bearing on the reason for the stop and bore a questionable relationship to the local officer's likely authority. As we observed in *Zuniga-Perez*, "being an Hispanic migrant is not a crime." 897 F.3d at 127 (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885-86 (1975)).

The remaining issue with respect to suppression, then, is whether Millan-Hernandez's documentary evidence "could support" a basis for concluding that her possibly unconstitutional seizure was "egregious" such that the agency was bound to conduct an evidentiary hearing on her motion. *See Cotzojay*, 725 F. 3d at 178.

Our review of the record leads us to conclude that Millan-Hernandez presented sufficient evidence that her seizure was based on her race to entitle her to an evidentiary hearing on the issue. She declared in her affidavit that, once the officer determined that the car's driver had a foreign passport, he did not question the driver further as to the alleged traffic violation before demanding that all of the passengers produce their "papers." CAR at 316-17. The Police Report is consistent with Millan-Hernandez's account. CAR at 321. Neither it nor anything else in the record reveals an alternative plausible basis for questioning and detaining the passengers, and the officer did not report inquiring of the passengers about any traffic or civil infractions, nor issuing any citations.

Millan-Hernandez concedes that she does not have direct evidence that her race or ethnicity was the reason for her seizure. But "discriminatory intent is rarely susceptible to direct proof . . . [and courts] facing a question of discriminatory intent must make a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 606 (2d Cir.

10

2016) (internal quotation marks omitted). We have recognized that, when a law enforcement officer detains and questions an individual about her immigration status although she is not suspected of a crime, those circumstances offer a strong suggestion that the search or seizure was improperly based on race. *See Rodriguez*, 943 F.3d at 143 ("[T]the sheer paucity of evidence supporting a finding of probable cause buttresses the conclusion that the arrest was racially motivated."). Illustrative of this principle, in *Zuniga-Perez* we held that the petitioners sufficiently established that a search was racially motivated when their Forms I-213 did not "identify any specific or articulable facts to believe that [the petitioner] . . . had committed a crime . . . [and the] petitioners' affidavits establish[ed] that they were questioned only after the troopers had determined that the suspected [criminal] was not present." 897 F.3d at 125. In reaching this conclusion, we found meaningful that the "[g]overnment ha[d] offered no explanation as to why the agents decided at that point to ask petitioners about their country of citizenship and immigration status—other than that the agents were looking for 'Hispanic migrants.'" *Id.*

Here, the officer's words ("You're not legal, right?") and his request for the passenger's "papers," CAR at 316-17, may not be as clearly race-related as, for example, statements that officers sought "known Hispanic migrants," *Zuniga-Perez*, 897 F.3d at 120-21. Nonetheless, coupled with the absence of probable cause to suspect that Millan-Hernandez (or, for that matter, the driver) had committed any crime, the officer's words strongly suggest that a racial or ethnic impetus could have been the reason for the detention. *See id.* at 120.

The government hypothesizes that Millan-Hernandez was questioned not because of her race or ethnicity, but "because [she] w[as] [a] passenger[] in the car." Respondent's Br. at 20. But even if questioning and detaining the driver may be constitutional in the context of a traffic stop, those circumstances do not immunize the

11

unrelated questioning and extended detention of passengers without probable cause. In particular, they do not shield a seizure of the car's passengers based on their race or ethnicity. *See Yoc-Us v. Att'y Gen.*, 932 F.3d 98, 113 (3d Cir. 2019) ("[An officer's] demand for . . . documentation [of immigration status], prior to *any* interaction with the passengers . . . , shows an assumption on [the officer's] part that the Petitioners and other passengers were not United States citizens, a conclusion he could have only come to based on their appearance.").

The government is also wide of the mark in contending that "[o]nly if an alien's affidavit is sufficiently compelling" is a suppression hearing warranted. Respondent's Br. at 11. That is not the tolerant standard that we articulated in *Cotzojay* or that we have since applied. *See supra* note 3. To obtain a hearing, a movant must simply provide evidence, including her own affidavit, that "could provide a basis" for suppression.

Viewing the evidence presented in the light most favorable to Millan-Hernandez, as we must at this stage of the proceedings, we conclude that it "could support a basis for exclu[sion]." *Cotzojay*, 725 F.3d at 178 (internal quotation marks omitted); *see also Almeida-Amaral*, 461 F.3d at 237. Millan-Hernandez has provided a basis for concluding that her prolonged detention was unlawful and that the reason for the prolongation was her race or ethnicity. The agency therefore erred by failing to conduct a suppression hearing.

**CONCLUSION**

In summary, we conclude that the agency misunderstood the standard that triggers entitlement to a suppression hearing. Applying the correct standard, we decide that Millan-Hernandez cleared the applicable evidentiary threshold and was entitled to a suppression hearing. For these reasons, the petition for review is **GRANTED** and the

cause is **REMANDED** for the agency to conduct further proceedings consistent with this Opinion.